OPINION OF THE COURT
Rosenblatt, J.
On this appeal, we must determine the circumstances under which Social Services Law § 143-b (5) (a) (the Spiegel Law) allows a social services tenant to withhold rent based on dangerous violations in the building.
L
Alexandra Rosario (tenant) resides with her husband and children in a Queens apartment owned by Notre Dame Leasing, LLC (landlord). The tenant, who receives public assistance, pays only a portion of her monthly rent, with the Human Resources Administration (HRA) paying the balance.
*463 On January 4, 2000, the landlord commenced a summary proceeding against the tenant in Civil Court to recover $1,454.43 in unpaid rent for October 1999 through January 2000. Relying on Social Services Law § 143-b (5), the tenant moved for summary judgment dismissing the proceeding. She asserted that because conditions in her building were “dangerous, hazardous or detrimental to life or health,” the law excused her from paying rent. In support, she submitted records from the New York City Department of Housing Preservation and Development (HPD) indicating that there were 33 class B and C violations in the building.[1]
Notwithstanding these violations, the HRA did not withhold rent from the landlord, although it could have, pursuant to its powers under section 143-b (2). The tenant contended, however, that under section 143-b (5) of the Social Services Law the mere presence of such violations justified her nonpayment of rent, even without previous withholding by the HRA. In response, the landlord introduced proof that HPD had reinspected the building, dismissed 13 of the violations and marked others as “pending.” As the pivotal issue on this appeal, the landlord argued that the tenant could not invoke section 143-b (5) unless the HRA first withheld its share of the rent payments.
Civil Court found that the tenant had made a prima facie showing that section 143-b (5) authorized her to withhold rent, but stayed the matter until the landlord submitted proof that it had remedied the violations. The landlord appealed to the Appellate Term, which reversed Civil Court and denied the tenant’s motion for summary judgment. The Appellate Term concluded that a tenant could not invoke the section 143-b (5) defense because the “public welfare department”—here, the HRA—had not withheld its share of rent payments to the landlord, pursuant to its authority under Social Services Law § 143-b (2). The Appellate Term later granted the tenant’s motion for reargument and, following reargument, reaffirmed its earlier decision and granted the tenant leave to appeal to the Appellate Division.
By a divided Court, the Appellate Division affirmed the Appellate Term’s reading of section 143-b (5). Two Justices, however, concluded that the language of section 143-b (5) sup *464 ported the tenant’s claim. The Appellate Division granted the tenant permission to appeal to this Court. We now affirm.
II
Social Services Law § 143-b (5) (a) provides that it “shall be a valid defense in any action or summary proceeding against a welfare recipient for non-payment of rent to show existing violations in the building wherein such welfare recipient resides which relate to conditions which are dangerous, hazardous or detrimental to life or health as the basis for non-payment.” The tenant contends that she should be able to invoke this defense whenever there is a qualifying violation in her building, regardless of whether the “appropriate social services agency”—here the HRA—has first withheld rent on that basis. We conclude that the structure, language, history and legislative intent of the Spiegel Law negate the tenant’s interpretation of section 143-b (5).
As we stated in People v Mobil Oil Corp. (48 NY2d 192, 199 [1979]), “[i]t is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other” (see also McKinney’s Cons Laws of NY, Book 1, Statutes § 97). Although section 143-b (5) might be read to allow a defense untethered to the actions of the public welfare department, such an interpretation undermines the statutory scheme. Section 143-b (5) is a constituent provision of a statute that primarily addresses the rights and responsibilities of the “public welfare department” and “public welfare officials],” and is best read that way.
Thus, section 143-b (1) authorizes the public welfare department to make direct rent payments to the landlord. Subdivision (2) authorizes public welfare officials to
“withhold the payment of any such rent in any case where he has knowledge that there exists or there is outstanding any violation of law in respect to the building containing the housing accommodations occupied by the person entitled to such assistance which is dangerous, hazardous or detrimental to life or health.”
The statute further obligates the “department or agency having jurisdiction over violations” to report them to the “appropriate public welfare department.” (Id.) Subdivision (3) empowers *465 public welfare officials to initiate rent reduction proceedings “whenever such official has knowledge that essential services . . . are not being maintained by the landlord or have been substantially reduced by the landlord.” Subdivision (4), in turn, permits the public welfare department to “obtain and maintain current records of violations in buildings where welfare recipients reside.” Finally, subdivision (6) allows the public welfare department to pay withheld rent “upon proof satisfactory to it that the condition constituting a violation was actually corrected.”
The dissent argues that the public welfare departments are apparently not using their powers under the Spiegel Law to withhold rent when violations are present. But it is for those agencies, not for us, to decide when their powers should be used. And if, indeed, the agencies are not doing enough, the proper remedy is for them to do more, not for us to rewrite the statute.
The dissent’s reading of section 143-b (5) is incompatible with the Spiegel Law’s framework. Section 143-b designates the public welfare department and its officials as the principal enforcement actors under the statute. It would be anomalous for the Legislature to fashion subdivision (5) as a private defense that tenants could invoke, independent of any agency action. Rather, section 143-b (5) is best understood as a means of shielding tenants from eviction when the public welfare department chooses to withhold rent, pursuant to its discretion under section 143-b (2). Indeed, the language of subdivision (5) itself suggests that agency action under section 143-b (2) is a condition precedent to a tenant’s invoking the section 143-b (5) defense. The Spiegel Law defense applies only when a building violation relating to “conditions which are dangerous, hazardous or detrimental to life or health” is the “basis for non-payment.” For the purposes of the Spiegel Law, however, agency action is required to determine the existence of a violation. Section 143-b (5) (c) provides that the “defenses provided herein . . . shall apply only with respect to violations reported to the appropriate public welfare department by the appropriate department or agency having jurisdiction over violations.”
The tenant’s interpretation of section 143-b (5) not only conflicts with the complex statutory scheme but also ignores the Spiegel Law’s history and purpose. According to amicus Legal Aid Society, at the time the Spiegel Law was enacted, public welfare department payments covered a tenant’s entire rent. In *466 promulgating Social Services Law § 143-b the Legislature intended to end the State’s “subsidizing slumlords who abuse and exploit welfare tenants, but nevertheless receive guaranteed monthly rent checks . . . from the Dept, of Welfare” (Letter to Honorable Robert MacCrate from Assemblyman Samuel A. Spiegel, dated Apr. 6, 1962, Bill Jacket, L 1962, ch 997, at 61). In the words of section 143-b’s sponsor, the Legislature sought to “attack[ ] the ‘jugular vein’ of the slumlord by temporarily withholding payments of rent until hazardous and dangerous violations are cleared” {id. at 62).[2] Elsewhere, Assemblyman Spiegel explained that, under the proposed law, “it would be a good defense in any action for non-payment of rent that there are dangerous or hazardous violations on a building and that public funds should not be permitted to be used to further the continuance of any building which is substandard” (Statement by Assemblyman Samuel A. Spiegel, dated Mar. 31, 1962, Bill Jacket, L 1962, ch 997, at 58-59 [emphasis added]).
In enacting section 143-b, the Legislature wanted to end government subsidies to landlords who failed to provide safe and habitable housing. As part of this effort, it created a defense that tenants could invoke when the public welfare department identified a violation in the building and withheld rent accordingly. The Legislature did not intend, however, to make this defense available to individual tenants when public welfare officials themselves recognized no imperative to suspend payment.
Although the tenant’s interpretation of section 143-b would, in certain instances, promote the Legislature’s objective of encouraging landlords to curb substandard conditions, it would also permit tenants to avoid paying rent for violations having no effect on them. As amended in 1997, RPAPL 745 (2) (a) requires tenants seeking to adjourn an eviction proceeding to “deposit with the court within five days sums of rent or use and occupancy accrued from the date the petition and notice of petition are served upon the respondent, and all sums as they become due for rent and use and occupancy.” Section 745 (2) exempts from this undertaking provision tenants who claim *467 actual eviction, actual partial or constructive eviction, as well as those who interpose a defense pursuant to the Spiegel Law.
Thus, as the tenant would have it, public assistance tenants subject to eviction proceedings could cite any violation in their buildings—even those having no effect whatsoever on them—as a basis for interposing a Social Services Law § 143-b (5) defense and would not pay rent (or deposit any with the court) during the pendency of the proceedings.[3] By contrast, in actions for eviction or unpaid rent, tenants claiming a breach of warranty of habitability under Real Property Law § 235-b (l)[4] 5or who seek an abatement of rent under Multiple Dwelling Law § 302-a for a “rent impairing” violation[5] must nevertheless deposit with the court the amount of rent sought to be recovered. We note that both Real Property Law § 235-b and Multiple Dwelling Law § 302-a permit tenants to withhold or abate rent for deficient conditions that, while outside their individual apartments, impair their occupancy and enjoyment of the building generally.
The Legislature designed Social Services Law § 143-b as a “weapon in the fight against slum housing in general” (Matter of Farrell v Drew, 19 NY2d 486, 490 [1967]). While we share the dissent’s concern over the importance of the Spiegel Law as a means of remedying substandard housing conditions, it would be improvident for us to rewrite the statute to reach that goal.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

. A class B violation is “hazardous,” whereas a class C violation is “immediately hazardous” (Administrative Code of City of NY § 27-2115 [c] [2], [3]).

. See also Attorney General’s Memorandum for the Governor, dated April 21, 1962 (Bill Jacket, L 1962, ch 997, at 7), which states, “[t]his bill seeks to correct the anomalous condition wherein one municipal department seeks to prevent slum and dangerous conditions from being maintained at the same time that another governmental unit is financially rewarding such maintenance.”

. We note, however, that section 143-b (2) does give the public welfare department discretion to withhold rent for any apartment in a building with a qualifying violation, regardless of the given apartment’s nexus with the violation.

. In pertinent part, Real Property Law § 235-b (1) provides that a “landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety.” We note that the tenant has raised breach of warranty of habitability as an affirmative defense in this case.

. Multiple Dwelling Law § 302-a (2) (a) defines a “rent impairing” violation as “a condition in a multiple dwelling which . . . constitutes, or if not promptly corrected, will constitute, a fire hazard or a serious threat to the life, health or safety of occupants thereof.”