OPINION OF THE COURT
Memorandum.
Order reversed without costs and matter remanded to the court below for a new calculation of interest in accordance with the decision herein.
In this action to recover overdue assigned first-party no-fault benefits, the parties stipulated to settle the principal amount owed on all claims for which defendant’s denials were timely and for which defendant issued no denials, as well as the statutory interest and attorney’s fees due thereon. Unable to agree on the date interest accrued on the claims for which defendant issued untimely denials, the parties stipulated to submit the question to the court below. The plaintiff sought interest from 30 days after the claims’ submission, while defendant insisted that interest accrued only from the date plaintiff commenced the action. The court found for plaintiff and defendant appeals.
An insurer is obligated to “pay or deny” a claim within 30 calendar days of the receipt of proof of claim (11 NYCRR 65-3.8 [c]).* Interest accrues when the payment of no-fault benefits is “overdue” (11 NYCRR 65-3.9 [a]), and benefits are overdue only if not “paid” within 30 calendar days of when the insurer receives a claim or verification (Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a]; e.g. Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 278 [1997]; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2004]; see generally 70A NY Jur 2d, Insurance § 1801). The effect of a denial on interest is set forth in 11 NYCRR 65-3.9 (c) which *106 states that an “applicant” must request arbitration or commence an action “within 30 days after the receipt of a denial of claim form or payment of benefits calculated pursuant to Insurance Department regulations” and bars interest “until such action is taken.”
“[IJnterest ... [is a] prescribed sanction[ ] only in late payment circumstances, not as to untimely denials of claims” (Presbyterian Hosp. in City of N.Y., 90 NY2d at 278; see Smithtown Gen. Hosp. v State Farm Mut. Auto. Ins. Co., 207 AD2d 338, 339 [1994]). Where, as here, there is no payment and an untimely denial, interest accrues 30 days from the date the claim is submitted (11 NYCRR 65-3.8 [a] [1]; 65-3.9 [a]; Hempstead Gen. Hosp. v Insurance Co. of N. Am., 208 AD2d 501 [1994]). Interest is thereafter stayed only where the claimant fails to submit the claim to arbitration or to commence an action within 30 days after receipt of the untimely denial of claim and resumes when either action is taken (11 NYCRR 65-3.9 [c]; Massapequa Gen. Hosp. v Travelers Ins. Co., 104 AD2d 638, 640 [1984]; State Farm Mut. Auto. Ins. Co. v Pfeiffer, 95 AD2d 806 [1983]).
Noting that 11 NYCRR 65-3.9 (a) addresses both “applicant” and “assignee,” the court below construed the absence of a reference to an assignee in 11 NYCRR 65-3.9 (c) to manifest the intent of the Superintendent of Insurance to exclude assignees from the requirement that an “applicant” seek arbitration or commence an action within 30 days of the receipt of the denial of claim form or be barred from interest “until such action is taken.” However, in an amicus brief, the Superintendent states that in promulgating 11 NYCRR 65-3.9 (c), the Department of Insurance had no intent to distinguish eligible injured persons from their assignees when it provided that interest on denied claims is tolled until the “applicant” seeks arbitration or commences an action, notwithstanding what it characterizes as a “redundant” reference to assignees in 11 NYCRR 65-3.9 (a). “In matters of statutory and regulatory interpretation . . . legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [enactors]” (Matter of ATM One v Landaverde, 2 NY3d 472, 476-477 [2004] [internal quotation marks omitted]). As the Legislature granted the Superintendent “broad power to interpret, clarify, and implement the legislative policy” in the no-fault arena (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 863-864 [2003] [internal quotation marks omitted]; see Insurance Law §§ 301, 5103 [d]; § 5106 [a]; § 5108 [b]), *107 when the Superintendent “properly craft[s] a rule within the scope of his [or her] authority, that rule has the force of law and represents the policy choice of this State” (State Farm, Mut. Auto. Ins. Co. v Mallela, 4 NY3d 313, 321 [2005]). Further, an agency’s interpretation of a regulation it promulgated “is entitled to deference” (Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal, 3 NY3d 337, 342 [2004] [internal quotation marks omitted]). Accordingly, deference must be accorded the Superintendent’s expression of intent herein with respect to the no-fault regulations, in light of the Superintendent’s “special competence and expertise with respect to the insurance industry” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d at 864 [internal quotation marks omitted]) unless, according to the normative rules of construction, the purported intent is “unreasonable or irrational” (Matter of Rodriguez v Perales, 86 NY2d 361, 367 [1995]) or so “conflicts with the plain meaning of the promulgated language” that the courts are obligated to disregard it (Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d 499, 506 [2005]).
To the extent that an issue of regulatory construction is presented, in the first instance we must consider the text’s “plain meaning” (Matter of Jansen Ct. Homeowners Assn. v City of New York, 17 AD3d 588, 589 [2005]). Plaintiff and, in an amicus brief, the Board of Advisers of the Acupuncture Society of New York, contend that the purported significance of the use of the terms “applicant” and “assignee” in 11 NYCRR 65-3.9 (a) and the use of only the term “applicant” in 11 NYCRR 65-3.9 (c) was intentional, invoking the rule of construction that the “failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74). However, it is also well settled that “a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other” (Matter of Notre Dame Leasing v Rosario, 2 NY3d 459, 464 [2004] [internal quotation marks omitted]) and “are to be so interpreted as to give effect to every part thereof . . . and any construction which deprives any part of a statute of effect and meaning, when it is susceptible of another interpretation giving effect to every part, is avoided” (McKinney’s Cons Laws of NY, Book 1, Statutes § 231, Comment). The aforementioned rule applies equally to the construction of regulations.
*108 A review of the use of “applicant,” “eligible injured person” and “assignee” in the no-fault regulations reveals that, while they are often employed interchangeably and occasionally redundantly, context invariably yields content. Many regulations refer to “applicant” genetically, where eligible injured persons and their provider-assignees are clearly meant (e.g. 11 NYCRR 65-3.2 [b]; 65-3.3 [a]; 65-3.8 [b]; 65-4.2 [b] [1] [i]). Other regulations refer to “applicant” when only an eligible injured person can be meant (11 NYCRR 65-3.8 [g]), and still others address, variously, an “eligible injured person or such person’s attorney” (11 NYCRR 65-3.6 [a]) and an “applicant and such person’s attorney” (11 NYCRR 65-3.6 [b]) when provider-assignees are also contemplated. Still other regulations refer only to “applicant” when either an eligible injured person or both eligible injured persons and their assignees are meant, depending on the remedy provided therein (11 NYCRR 65-3.5 [e], [1]). These citations are merely illustrative of the categories discussed (e.g. 11 NYCRR 65-3.8 [b] [2] [“applicant” means the eligible injured person in one clause and both the eligible injured person and his or her assignee in another clause]).
Indeed, the Superintendent, whose interpretation of the Insurance Department’s regulations, as noted, is entitled to deference, acknowledges that the terms “applicant” and “assignee” are used elsewhere in the regulations where “applicant,” employed genetically, and in lieu of “claimant” (Insurance Law § 5106 [a]), would have sufficed (e.g. 11 NYCRR 65-3.10 [a]; 11 NYCRR 65-4.8 [b]). The Superintendent urges that such is the case with 11 NYCRR 65-3.9 (a) (see McKinney’s Cons Laws of NY, Book 1, Statutes § 231, Comment [“It is recognized . . . that the drafters of statutes do not always use the most apt words to express their intent; . . . that words are frequently used in a statute which are not necessary, but are to some extent superfluous”]).
There is an additional reason why it is not reasonable to suppose the Insurance Department intended to omit reference to assignees in 11 NYCRR 65-3.9 (c). The interest provision, presently at 24% per annum, is punitive in nature (Dermatossian v New York City Tr. Auth., 67 NY2d 219, 224 [1986]) and “designed to inflict an economic sanction or penalty on those insurers who do not comply” (Cardinell v Allstate Ins. Co., 302 AD2d 772, 774 [2003]). As the No-Fault Law is in derogation of the common law and “must be strictly construed” (Presbyterian Hosp. in City of N.Y. v Atlanta Cas. Co., 210 AD2d 210, 211 *109 [1994]), the regulations must be interpreted in a manner conducive to the legislative goal of deterring dilatory responses to claims (Brunner v Allstate Ins. Co., 79 AD2d 491, 494 [1981]). Indeed, if interest is a penalty provision and a key mechanism of the Legislature’s mandate “to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of . . . accidents” (Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211, 214 [1996]), the imposition of a disparate application of the penalty depending on whether the applicant is an eligible injured person or a provider/assignee would contravene that goal.
The construction adopted by the court below creates the anomalous result that, rather than acting promptly to resolve a dispute, assignees only may decline to act on a claim upon which a mandatory punitive interest penalty is imposed (St. Clare’s Hosp. v Allstate Ins. Co., 215 AD2d 641 [1995]), for as long as the statute of limitations for breach of contract has yet to run (CPLR 213 [2]), and receive interest at a rate more than twice what is provided for ordinary breach of contract actions (CPLR 5004). The regulations do not permit eligible injured persons to delay arbitration or suit for such a purpose (11 NYCRR 65-3.9 [c]) and there is no rationale discernable in purposes of the No-Fault Law to support such a result.
The regulations, read as a whole in accordance with the rules of construction, the deference to be accorded the Superintendent’s assertion of intent, and the undesirable consequences of exempting assignees from the limitation imposed by 11 NYCRR 65-3.9 (c), lead to the conclusion that the reference to “applicant” in 11 NYCRR 65-3.9 (c) includes an eligible injured person’s assignee. Accordingly, the matter is remanded to the court below for a calculation of the statutory interest due in accordance with the decision herein.
Pesce, PJ., Golia and Belen, JJ., concur.

 Although the claims herein predate the amendments to the no-fault regulations effective April 5, 2002, as the regulations at issue were not modified to any material extent, they are cited as presently promulgated.