[898 NE2d 921, 869 NYS2d 878]

In the Matter of BROOKLYN ASSEMBLY HALLS OF JEHOVAH'S WITNESSES, INC., Appellant, v DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE CITY OF NEW YORK et al., Respondents.

Argued September 9, 2008; decided October 28, 2008

**POINTS OF COUNSEL**

*Philip Brumley, General Counsel, Watchtower Bible and Tract Society of New York, Inc.,* Patterson (*John O. Miller, III,* of counsel), for appellant. The requirement that exempt property be "actually dedicated and used . . . exclusively as a place of public worship" does not preclude the presence of more than one necessary and reasonably incidental dwelling on the property. (*Matter of New York City Tr. Auth. v New York State Dept. of Labor,* 88 NY2d 225; *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,* 66 NY2d 948; *Matter of Association of Bar of City of N.Y. v Lewisohn,* 34 NY2d 143; *People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350; *Matter of Bethelite Community Church, Great Tomorrows Elementary School v Department of Envtl. Protection of City of N.Y.,* 8 Misc 3d 274, 27 AD3d 256, 8 NY3d 1001; *Matter of Associated YM-YWHA'S of Greater N.Y. v D'Angelo,* 38 Misc 2d 1082; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Ronald E. Sternberg* and *Leonard Koerner* of counsel), for respondents. Because the administrative interpretation of the

statute in question is reasonable and not arbitrary, capricious or an abuse of discretion, the Appellate Division appropriately "f[ound] no basis to disturb" it. (*Matter of Howard v Wyman,* 28 NY2d 434; *Samiento v World Yacht Inc.,* 10 NY3d 70; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244; *Matter of Bethelite Community Church, Great Tomorrows Elementary School v Department of Envtl. Protection of City of N.Y.,* 27 AD3d 256, 8 NY3d 1001; *Matter of Legion of Christ v Town of Mount Pleasant,* 1 NY3d 406; *Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52; *Robertson v Zimmermann,* 268 NY 52; *Brass v Rathbone,* 153 NY 435; *Town Bd. of Town of Poughkeepsie v City of Poughkeepsie,* 22 AD2d 270; *Matter of Association of Bar of City of N.Y. v Lewisohn,* 34 NY2d 143.)

## OPINION OF THE COURT

READ, J.

Petitioner Brooklyn Assembly Halls of Jehovah's Witnesses, Inc. (the Church) owns and operates a 100,000-square-foot building at the corner of Flatbush Avenue and Albemarle Road in Brooklyn. The building is four stories high, with an attached three-story structure, and contains multiple meeting and assembly halls used for religious instruction and worship.

Respondent New York City Water Board is an autonomous public benefit corporation empowered to set water and sewer rates sufficient to support New York City's water and sewer systems (Public Authorities Law §§ 1045-f, 1045-j). Pursuant to an agreement between the City and the Board, respondent Department of Environmental Protection (DEP) acts as the Board's agent, responsible for billing and collecting water and sewer charges, maintaining accounts, and issuing determinations upon applications for water and sewer exemptions.

The Church first applied for an exemption from water and sewer charges for the Flatbush building in January 1991. Exemptions from city water charges are governed by chapter 696 of the Laws of 1887, as subsequently amended (the water exemption statute),[1] which provides that

> "the real estate owned by any religious corporation located in the city of New York as now constituted,

---

1. This statute has not been classified by the Legislature to the Consolidated Laws of the State of New York, nor is it included in McKinney's Unconsolidated Laws.

*actually dedicated and used by such corporation exclusively as a place of public worship,* [is] hereby exempted from the payment of any sum of money whatever to said city, for the use of water taken by same from said city'' (L 1887, ch 696, § 1, as amended by L 1907, ch 135, § 1 [emphasis added]).

Concomitantly, New York City Administrative Code § 24-514 (e) exempts ''[a]ny real property . . . entitled to an exemption from the payment of water rents or charges . . . from payment of the sewer rents or charges imposed hereunder.''

In its 1991 exemption application, the Church indicated that the Flatbush building included ''2 apartments for 2 caretakers.'' When asked whether any portion of the building was used for dwelling purposes and, if so, to describe the occupant's affiliation with the organization, the Church answered that there were ''[t]wo apartments on premises—One is for the manager and his wife. The second apartment is for the technical maintenance caretaker and his wife. All are ministers.''

On April 19, 1991, DEP denied the Church's application, concluding that the Flatbush building ''d[id] not qualify at th[at] time'' for the requested exemption. The DEP advised the Church, however, that it

''may qualify for a partial exemption. The only portion qualified would be the basement, first and second floor area. Only one dwelling is allowed for a caretaker.

''Since the entire premises is metered by a single meter [*sic*] in order to have a partial exemption a branch meter must be installed for the non exempt [*sic*] portion.''

The Church did not again apply for an exemption until June 4, 2002. In the application's cover letter, the Flatbush facility's manager stated that there were ''regularly scheduled events 30 weekends per year with approximately 1500-2000 in attendance per day at each event.'' Explaining the two caretaker apartments, he added that ''[d]ue to the size of our facility, maintenance and security needs, and insurance requirements, a caretaker must be on the premises 24 hours a day, seven days a week. Therefore, two caretakers are needed to live on the premises.''

On June 14, 2002, DEP returned the Church's application on the ground that ''the use of the building ha[d] not changed

[and] therefore the property . . . [was] still not eligible for exemption." On May 31, 2004 (just shy of a two-year administrative deadline), the Church filed a complaint to contest DEP's action. Having received no written response, the Church renewed its complaint on January 3, 2005.

On January 27, 2005, DEP's Exemption Manager endorsed his agency's 2002 decision to return the Church's exemption application. He summarized what had happened in 1991, and pointed out that a recent inspection had revealed guest rooms on the building's fourth floor, or balcony level, which were not disclosed in the Church's 2002 application. The Exemption Manager then concluded that

> "[t]he law states 'property used **exclusively** as a place of public worship is eligible for exemption'. One dwelling only is allowed for the caretaker. Many of our not-for-profit religious organizations are of considerable size, and have one caretaker or install a separate meter. We cannot make an exception based on the size of the building."

On February 18, 2005, the Church appealed this decision to the Water Board's Executive Director.

On June 15, 2005, the Executive Director denied the Church's appeal and confirmed DEP's determination. He opined that in order for an organization to qualify for an exemption,

> "the premises must be used exclusively for a qualifying purpose, or if the premises is not used exclusively for a qualifying purpose, the non-qualifying portion must be separately metered. For this premises, neither condition is met as the meter records consumption on both the part that may qualify (the assembly hall) and the non-qualifying portion (the additional caretaker apartment and two guest rooms). A single room or a small apartment for a caretaker is considered incidental; accommodations for an additional caretaker and two additional guests are not a qualifying exempt use."

He further advised the Church that it could pursue "the option of separately metering the water service to the non-exempt portion," in which event "an exemption [might] then be applied for on the qualifying portion of the premises, and if granted, [would] be applied on a prospective basis only."

On May 24, 2005, prior to issuance of this unfavorable decision (which was apparently overdue at the time), the Church

commenced a CPLR article 78 proceeding in Supreme Court against DEP, the Executive Director, the City and Mayor Bloomberg. In its amended petition sworn to June 29, 2005, the Church sought a judgment annulling and vacating DEP's and the Executive Director's determinations; and directing and compelling respondents to grant the Church's application for an exemption, and to reimburse the Church for charges paid under protest. The Church argued that the determinations denying its request for exemption were arbitrary and capricious and contrary to law.

In a judgment dated December 15, 2005, Supreme Court granted the Church the relief that it had requested. In an accompanying memorandum dated October 25, 2005, Supreme Court opined that previous trial court decisions allowing an exemption from the payment of water charges under similar circumstances were binding on the Board (2005 NY Slip Op 30298[U]). Further, the Court analogized water exemptions with real property tax exemptions for buildings used exclusively for religious purposes.

After respondents appealed, the Appellate Division reversed on the law, denied the petition and dismissed the proceeding on the merits. The Court considered the Board's 2005 determination to be consistent with DEP's 1991 decision that the Church was, upon a proper application and the same operative facts, entitled only to a partial exemption. The Appellate Division further observed that "while reasonable minds [might] differ as to the precise scope of the statutory exemption," DEP's and the Board's "strict interpretation . . . under the facts presented" was not "so literal and narrow that it defeat[ed] the exemption's settled purpose" (*Matter of Brooklyn Assembly Halls of Jehovah's Witnesses, Inc. v Department of Envtl. Protection of City of N.Y.*, 39 AD3d 541, 543 [2d Dept 2007] [internal quotation marks and citations omitted]). We granted the Church's motion for leave to appeal (9 NY3d 817 [2008]), and now affirm.

Chapter 696 of the Laws of 1887, entitled "AN ACT to provide hospitals, orphan asylums and other charitable institutions in the city of New York with water, and remitting assessments therefor," originally exempted only the City's "several hospitals, orphan asylums and homes for the aged" from paying "any sum of money whatever to said city, for the use of water taken by the same from said city" (L 1887, ch 696, § 1). Chapter 135 of the Laws of 1907 first added the language "or the real estate owned by any religious corporation located in the city of New York as

now constituted, actually dedicated and used by such corporation exclusively as a place of public worship" (L 1907, ch 135, § 1). The City is the only political entity in the State required to provide free water to certain institutions located within its borders.

And over time, the categories of institutions enjoying the exemption expanded considerably.[2] In addition, section 93d-9.0 of the Administrative Code allowed the former Board of Estimate, by unanimous vote and with the City Comptroller's written approval, to cancel liens for water charges for institutions qualified for real property tax exemption under what is now section 420-a (1) of the Real Property Tax Law, thereby excusing additional organizations from paying the City for the water they consumed. For example, educational institutions, which did not qualify for an exemption under the water exemption statute, routinely obtained cancellation of liens for water charges in this way.

The resulting loss of revenue spurred the City to urge the Legislature repeatedly to cut back the statutory scheme, and in 1980, the Legislature responded by enacting a compromise: the exemption was extended to real estate owned by nonprofit corporations or associations used exclusively for K-12 education and entitled to a real property tax exemption, but was structured so as to calibrate the exemption to an organization's level of water usage,[3] or eligibility for government reimbursement (e.g., through Medicaid) for water charges (L 1980, chs 893, 894).

Against this backdrop, the city agencies responsible for implementing the water exemption statute (the Board and DEP)

---

**2.** By 1980, for example, in addition to hospitals, orphan asylums, homes for the aged and religious corporations, the statute also exempted dispensaries, women's shelters, day care centers, emergency relief centers, medical research centers, public baths, free school societies, free circulating libraries, veteran firemen's associations, social settlements and military veterans' associations.

**3.** Specifically, the 1980 amendment limited free water to those institutions where $5,000 worth of water a year or less was used, and allowed the City to charge half price for usage of more than $5,000 but not more than $10,000 a year, and full price where the value of the water supplied exceeded $10,000 a year (L 1980, ch 893, § 2). In 1982, the Legislature again amended the statute to provide that "[i]n the event the rate charged for water rents or charges is increased, the base values of [$5,000] and [$10,000] . . . shall be increased by an amount equal to the percentage increase in such rate" (L 1982, ch 890, § 1). The Legislature also added a two-year sunset provision (id. § 2), although the law has been extended every two years since, most recently until September 1, 2010 (see L 2008, ch 518).

have consistently interpreted it sparingly, consistent with its plain meaning. That is, they have read the phrase *"actually dedicated and used . . . exclusively* as a place of public worship" (emphasis added) to exempt from water charges only that portion of a religious corporation's property in fact used for public worship, plus a single caretaker residence. Such incidental uses as additional caretaker residences are not exempt; guest rooms for visiting clergy are not exempt; and clergy residences are not exempt unless the clergy doubles as the caretaker. Where nonexempt and exempt uses coexist on the same property, the agencies afford a partial exemption to the religious corporation, subject to some mechanism, such as submetering, for separately identifying the exempt and nonexempt volumes of water consumed.

As a general rule, "the construction given statutes . . . by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (*Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971]; *see also Samiento v World Yacht Inc.*, 10 NY3d 70, 79 [2008]). Here, the Church argues that the agencies' interpretation of the water exemption statute is, in fact, arbitrary, capricious and without rational basis for two reasons.

First, the Church objects that the agencies ignore a religious organization's actual need and actual water consumption. In short, "the City's response to all applications for exemption is based on a rigid, one-size-fits-all standard regardless of individual circumstances or mitigating factors." In effect, the Church advances the proposition that, having read the statute broadly enough to extend the exemption to a single caretaker residence, the agencies must assess how many caretakers a religious corporation actually needs when multiple caretaker residences are claimed in an exemption application.

But having opened the door a crack for a single caretaker residence—an interpretation neither mandated nor prohibited by the statute—the agencies are not compelled to fling it wide open to welcome additional incidental uses. Nothing in the water exemption statute's legislative history or evolution over time suggests that the Legislature intended a broad interpretation. The Legislature itself has, after all, cabined the exemption, recognizing that the City incurs costs to supply water to its citizens, which are normally recouped through charges linked to usage. To the extent that certain users are excused from paying their share of these costs, an additional burden falls upon other consumers.

While the agencies might legitimately have chosen to read the statute more generously, we cannot say that they acted irrationally by limiting the exemption to premises devoted exclusively to public worship plus the residence of a caretaker for these premises, if there is one. This interpretation, uniformly applicable to religious corporations throughout the City, is easily understood and administered, and is reasonable in light of the water exemption statute's language and legislative history.

Next, the Church points to Real Property Tax Law § 420-a (1), which exempts from taxation any real property owned by a corporation or association organized or conducted exclusively for religious purposes, if used exclusively for such purposes. In *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg* (79 NY2d 244 [1992]), we explained that "[t]he term 'exclusively', *in this context*, has been broadly defined to connote 'principal' or 'primary' such that purposes and uses merely 'auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption' " (*id.* at 249, quoting *Matter of Association of Bar of City of N.Y. v Lewisohn*, 34 NY2d 143, 153 [1974] [emphasis added]).

The agencies were not, however, called upon to interpret the statutory exemption from water charges afforded religious corporations "in th[e] context" of Real Property Tax Law § 420-a (1). The water exemption statute does not identify eligible religious organizations by referring to Real Property Tax Law § 420-a (1) (or its predecessor statute in effect in 1907, section 4 [7] of the 1896 Tax Law [L 1896, ch 908]). Further, section 420-a (1) (which originated in the Tax Law) and the water exemption statute (which has always been freestanding) do not share a common legislative source; the enactors of the water exemption statute obviously could not have known how the courts would explain the word "exclusively" in the Real Property Tax Law many decades later. There is no basis, therefore, as a matter of legislative intent, to conclude that "exclusively" was to mean the same thing in the two statutes.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting). Because I believe the Department of Environmental Protection's (DEP) unwritten rule—that in order for the religious property to qualify for exemption pursuant to the water exemption statute or the sewer ordinance it may not contain more than one caretaker residence on the proper-

ty—is arbitrary, capricious and unreasonable, I respectfully dissent.

The water exemption statute here at issue provides, in relevant part, that

> "the real estate owned by any religious corporation located in the city of New York as now constituted, actually dedicated and *used by such corporation exclusively as a place of public worship* . . . [is] hereby exempted from the payment of any sum of money whatever to said city, for the use of water taken by same from said city" (L 1887, ch 696, § 1, as amended by, inter alia, L 1907, ch 135, § 1, and L 1980, ch 893, § 1 [emphasis added]).

The City's sewer ordinance provides that any property entitled to an exemption from the payment of water rents or charges shall also be exempt from payment of the sewer rents or charges (Administrative Code of City of NY § 24-514 [b] [5]; [e]). The pertinent issue in this case is whether the property is used "exclusively as a place of public worship" to qualify for the exemption.

The Church argues without contradiction that exclusive use also includes uses of that property that are incidental to the property's eleemosynary use. By allowing one caretaker residence, the DEP concedes that "exclusive use" cannot be interpreted literally and another use may exist on the property. Why is it then, the Church asks, that one caretaker for a small religious property is permitted under the exemption, but two caretakers, essential for a much larger institution, are not? A good question that, in my view, has no answer and requires reversal in this case.

The Church points us to two prior decisions of New York courts that have rejected the City's one caretaker rule. In *Matter of Bethelite Community Church, Great Tomorrows Elementary School v Department of Envtl. Protection of City of N.Y.* (27 AD3d 256 [1st Dept 2006], *revd on other grounds* 8 NY3d 1001 [2007]), the First Department held that a corporation that operated a church and school in a building in Manhattan was entitled to an exemption from the payment of water and sewer charges pursuant to the statute, despite the fact that the pastor, a church administrator/religious counselor and a full-time teacher for the school resided in three apartments within the building. And in *Matter of Chung*

*Te Buddhist Assn. of N.Y., Inc. v Kusterbeck* (2003 NY Slip Op 51432[U] [Sup Ct, NY County 2003]), Supreme Court granted a water exemption to an applicant that had 14 rooms for overnight guests and priests.

Those two courts found persuasive our cases interpreting the exemption for religious organizations from real property taxes,* noting that these exemption statutes "have [the] same underlying purpose" (*Chung*, 2003 NY Slip Op 51432[U] at *5). In interpreting the exemption for religious organizations under the Real Property Tax Law, we have construed the Legislature's requirement that the religious property be used "exclusively" for its religious purposes to mean "principally" or "primarily" (*see Matter of Symphony Space v Tishelman*, 60 NY2d 33, 38 [1983]; *Mohonk Trust v Board of Assessors of Town of Gardiner*, 47 NY2d 476, 483 [1979]), and held that "uses merely auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption" (*Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg*, 79 NY2d 244, 249 [1992] [internal quotation marks omitted]).

In *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg* (79 NY2d 244 [1992]), we considered whether a not-for-profit religious corporation whose primary purpose is the teaching of principles and doctrines of the Jewish faith was entitled to real property tax exemption for a 31-acre parcel of land it owned. The property was used primarily during the summer months when students were provided rigorous religious and educational instruction. The property contained a main building with a kitchen and communal dining room, a ritual bath, recreational facilities, classrooms, synagogues and a variety of housing facilities including 64 bungalows and six trailers (*id.* at 247). Petitioner sought exemption pursuant to section 420-a of the Real Property Tax Law, but was granted the application only in part. The assessor determined that the housing units and wooded land were taxable because they were not used

---

* Real Property Tax Law § 420-a provides for mandatory real property tax exemption for religious organizations. This section states in pertinent part that:

> "Real property owned by a corporation or association organized or conducted *exclusively* for . . . *religious* . . . *purposes,* and *used exclusively* for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section" (RPTL 420-a [1] [a] [emphasis added]).

exclusively for religious purposes (*id.* at 248). We stated the test for "exclusive use" under the Real Property Tax Law as follows:

> "The test of entitlement to tax exemption under the 'used exclusively' clause of the statute is whether the particular use is 'reasonably incident[al] to the [primary or] major purpose of the [facility]'. Put differently, the determination of 'whether the property is used exclusively for the statutory purposes depends upon whether its primary use is in furtherance of the permitted purposes'" (*id.* at 250 [citation and some internal quotation marks omitted]).

Applying this test, we held that the entire property, including the housing units and the trailer occupied by the caretaker, was entitled to a real property tax exemption because the challenged uses were incidental to the religious purposes of the organization.

Here, the DEP offers no explanation how a single caretaker residence better achieves the objective of the water or sewer exemption, while two, or perhaps one and a visiting pastor's residence, do not. Nor does the statute's language or the legislative history support the DEP's rule. The purpose of the water exemption statute, like that of the Real Property Tax Law exemption, is to benefit not-for-profit charitable, educational and religious organizations. The City's strict one caretaker rule ignores an exempt organization's actual need, by denying the statutory exemption to those organizations whose exempt use requires more on-site personnel or incidental facilities than a similar smaller institution. The small and large, by being treated the same, are being treated unequally.

The test for entitlement to an exemption under the water statute or sewer ordinance should be clear—whether the particular use is reasonably incidental to the primary purpose of the exempt organization. Applying such a test here, not even the DEP disputes that the Church is a religious corporation whose real property is dedicated and used exclusively as a place of public worship. Nor does the DEP dispute the Church's stated need for round the clock caretakers and that the residences for those caretakers are "incidental and necessary" to the operation of the Church. It has simply decided that "one is enough" and that position, in my view, is arbitrary.

Consequently, the DEP's decision to deny the requested exemption was arbitrary and capricious and should be reversed.

Chief Judge KAYE and Judges CIPARICK and GRAFFEO concur with Judge READ; Judge PIGOTT dissents in a separate opinion in which Judges SMITH and JONES concur.

Order affirmed, with costs.