[873 NYS2d 335]

EAST ACUPUNCTURE, P.C., Appellant, v ALLSTATE INS. CO., Respondent.

Second Department, February 17, 2009

APPEARANCES OF COUNSEL

*Gary Tsirelman, P.C.*, Brooklyn (*Max Valerio* of counsel), for appellant.

*Saiber LLC*, New York City (*Agnes I. Rymer, David J. D'Aloia* and *McDonnell & Adels, P.C.* [*Martha S. Henley*] of counsel), for respondent.

*Andrew M. Cuomo, Attorney General*, New York City (*Benjamin N. Gutman* and *Peter Karanjia* of counsel), amicus curiae, for Superintendent of Insurance of State of New York.

## OPINION OF THE COURT

BALKIN, J.

The principal issue on this appeal, which is a matter of conflicting decisions within our trial courts,[1] is whether a toll on the accrual of statutory interest on overdue no-fault claims pursuant to 11 NYCRR 65-3.9 (c) applies to claims submitted to insurers by medical providers as assignees of policyholders, or is restricted to claims submitted directly by the policyholders themselves. We hold that the tolling regulation applies to both.

## I.

The following facts are essentially undisputed. The plaintiff, East Acupuncture, P.C. (hereinafter East Acupuncture), a health care provider, treated several individuals injured in automobile

---

1. Among the conflicting decisions within our trial courts in the Second Judicial Department are: *Brooklyn Chiropractic Assoc., P.C. v Progressive Cas. Ins. Co.* (17 Misc 3d 13, 15 [App Term, 2d & 11th Jud Dists 2007] [interest accrues upon commencement of arbitration or action]), *Vista Surgical Supplies, Inc. v State Farm Mut. Auto. Ins. Co.* (15 Misc 3d 1143[A], 2007 NY Slip Op 51127[U] [Civ Ct, Kings County 2007] [same]), *Tsai Chao v Country-Wide Ins. Co.* (11 Misc 3d 1090[A], 2006 NY Slip Op 50794[U] [Dist Ct, Nassau County 2006] [same]), and *Elmont Open MRI & Diagnostic Radiology, P.C. v Country-Wide Ins. Co.* (15 Misc 3d 552 [Dist Ct, Nassau County 2007] [interest accrues 30 days after claim submission]).

accidents between July 20, 2000 and June 21, 2001 (hereinafter the injured persons), and received assignments of their no-fault benefits under automobile insurance policies issued by the defendant Allstate Ins. Co. (hereinafter Allstate). East Acupuncture, as assignee, submitted claims for no-fault benefits to Allstate; in response, Allstate timely denied some claims, issued no denials for some claims, and untimely denied other claims.

As a result, by summons and verified complaint dated June 18, 2004, East Acupuncture, as the assignee of the injured persons, commenced the instant action against Allstate in the Civil Court of the City of New York, Kings County to recover the claimed no-fault benefits, alleging, in relevant part, that it timely submitted bills and claims to Allstate for the payment of such services, but that they remained unpaid. Contemporaneously therewith, by notice of motion dated July 19, 2004, East Acupuncture moved for summary judgment in its favor for the amount of the principal sums demanded in the complaint plus statutory interest, arguing that Allstate had failed to establish that it paid or denied East Acupuncture's claims within the required 30 days under Insurance Law § 5106 (a).

While that motion was pending, East Acupuncture and Allstate engaged in negotiations and ultimately entered into a stipulation of settlement providing that East Acupuncture would receive: 80% of the outstanding principal of all the assigned no-fault claims for which it sought payment; 100% of interest, accrued from the date East Acupuncture filed its complaint, on claims that Allstate had timely denied; and 90% of interest, accrued from 30 days after Allstate received proof of claim, on claims that Allstate had not denied. Finally, for claims that Allstate had untimely denied, the stipulation entitled East Acupuncture to recover 100% of interest *"beginning either from [30] days after insurer received the claim or the date [East Acupuncture]'s complaint was filed to be* DETERMINED BY THE COURT."

In their affirmations submitted to the Civil Court in support of and in opposition to East Acupuncture's motion for summary judgment, East Acupuncture and Allstate disagreed as to whether the interest toll pursuant to 11 NYCRR 65-3.9 (c)[2] applied to the no-fault claims of medical providers as assignees of

---

2.  11 NYCRR 65-3.9 specifically provides, in relevant part, the following:
    "(a) All overdue mandatory and additional personal injury protection benefits due *an applicant or assignee* shall bear interest at a rate of two percent per month, calculated on a pro rata basis us-

policyholders (hereinafter provider/assignees), such as East Acupuncture, or was limited to the claims submitted by the injured persons directly. More pointedly, East Acupuncture sought interest from 30 days after the claims' submission, while Allstate insisted that interest accrued only from the commencement date of the action. By order dated June 27, 2005, the Civil Court granted that branch of East Acupuncture's motion which was for summary judgment awarding it interest on the untimely denied claims, with such interest accruing from 30 days after Allstate received proof of the claims. The Civil Court concluded that the interest toll pursuant to 11 NYCRR 65-3.9 (c) applied only to the claims of the injured persons, not to those of provider/assignees (*see East Acupuncture, P.C. v Allstate Ins. Co.*, 8 Misc 3d 849, 851-852 [Civ Ct, Kings County 2005]).

Allstate appealed from that order to the Appellate Term of the Supreme Court for the Second, Eleventh and Thirteenth Judicial Districts. The parties reiterated their arguments below and were joined by the New York State Superintendent of Insurance (hereinafter the Superintendent), who was granted leave to file a brief and argue as amicus curiae.

Agreeing with Allstate and the Superintendent, the Appellate Term, by order dated January 3, 2007, reversed the order of the Civil Court and remitted the matter for a new calculation of interest on the untimely denied claims, with such interest accruing from the date East Acupuncture filed its complaint. The Appellate Term concluded that the interest toll pursuant to 11 NYCRR 65-3.9 (c) applied to the claims of both types of

---

ing a 30-day month. When payment is made on an overdue claim, any interest calculated to be due in an amount exceeding $5 *shall be paid to the applicant or the applicant's assignee* without demand therefor. . . .

"(c) If *an applicant* does not request arbitration or institute a lawsuit within 30 days after the receipt of a denial of claim form or payment of benefits calculated pursuant to Insurance Department regulations, interest shall not accumulate on the disputed claim or element of claim until such action is taken. If *any applicant* is a member of a class in a class action brought for payment of benefits, but is not a named party, interest shall not accumulate on the disputed claim or element of claim until a class which includes *such applicant* is certified by court order, or such benefits are authorized in that action by Appellate Court decision, whichever is earlier.

"(d) If *an applicant* has submitted a dispute to arbitration or the courts, interest shall accumulate, unless the applicant unreasonably delays the arbitration or court proceeding" (emphasis added).

claimants, the injured persons and provider/assignees (*see East Acupuncture, P.C. v Allstate Ins. Co.*, 15 Misc 3d 104 [App Term, 2d, 11th & 13th Jud Dists 2007]). The Appellate Term additionally noted that although the subject claims predated the no-fault regulations effective April 5, 2002 the regulations at issue had not been modified to any material extent (*id.* at 105 n).

By decision and order on motion dated August 28, 2007, this Court granted East Acupuncture's motion for leave to appeal from the order of the Appellate Term. On its appeal, East Acupuncture maintains that the order of the Appellate Term should be reversed, inter alia, because the term "applicant," as used in 11 NYCRR 65-3.9 (c), refers only to the injured persons, not to provider/assignees. For their part, Allstate and the Superintendent, as amicus curiae, argue that both types of no-fault claimants are subject to the interest toll under this regulation.

## II.

By way of background, in 1973, the New York State Legislature enacted the Comprehensive Automobile Insurance Reparations Act (L 1973, ch 13; hereinafter the No-Fault Law)—presently codified in article 51 of the Insurance Law—supplanting common-law tort actions for most victims of automobile accidents with a system of no-fault insurance (*see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274, 281 [1997]; *Walton v Lumbermens Mut. Cas. Co.*, 88 NY2d 211, 214 [1996]).

> "Under the no-fault system, payments of benefits 'shall be made as the loss is incurred' (Insurance Law § 5106 [a]). The primary aims of this new system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 860 [2003]; *see* Governor's Mem approving L 1973, ch 13, 1973 McKinney's Session Laws of NY, at 2335).

In order to fulfill these goals, the Insurance Law provides that a claim for no-fault automobile insurance benefits is overdue "if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained" (Insurance Law

§ 5106 [a];[3] *see New York & Presbyt. Hosp. v Allstate Ins. Co.*, 30 AD3d 492, 493 [2006]), and "[a]ll overdue payments shall bear interest at the rate of two percent per month" (Insurance Law § 5106 [a]). Building upon these precepts, the Superintendent has promulgated regulations implementing the No-Fault Law for the last 35 years, currently contained in 11 NYCRR part 65.[4] More particularly, under 11 NYCRR 65-3.11 (a), an insurer shall pay benefits directly to the "applicant," or, upon assignment by the applicant, "shall pay benefits directly to providers of health care services." Pursuant to 11 NYCRR 65-3.8 (c), "[w]ithin 30 calendar days after proof of claim is received, the insurer shall either pay or deny the claim in whole or in part." Under 11 NYCRR 65-3.8 (a) (1), "[n]o-fault benefits are overdue if not paid within 30 calendar days after the insurer receives proof of claim" (*see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d at 278; *Cardinell v Allstate Ins. Co.*, 302 AD2d 772, 774 [2003]).

Relevant to the instant dispute, 11 NYCRR 65-3.9 governs the accrual of interest on overdue no-fault payments. Pursuant to 11 NYCRR 65-3.9 (a), "[a]ll overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month" (*see Hempstead Gen. Hosp. v Insurance Co. of N. Am.*, 208 AD2d 501 [1994]). However, 11 NYCRR 65-3.9 (c) provides that

> "[i]f an *applicant* does not request arbitration or institute a lawsuit within 30 days after the receipt of a denial of claim form or payment of benefits calculated pursuant to Insurance Department regulations, interest shall not accumulate on the disputed claim or element of claim until such action

---

**3.** Insurance Law § 5106 (a) ("Fair claims settlement") provides, in relevant part, as follows:

> "Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. *Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained.* If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied. All overdue payments shall bear interest at the rate of two percent per month" (emphasis added).

**4.** Although East Acupuncture's claims predate the current version of the no-fault regulations, which became effective April 5, 2002, the regulations at issue were not materially amended and are cited herein as presently promulgated.

is taken" (emphasis supplied), thereby providing a toll on the accrual of the statutory interest.

## III.

The critical issue before this Court is whether the toll on the accrual of statutory interest on overdue no-fault claims pursuant to 11 NYCRR 65-3.9 (c) applies to claims submitted to insurers by provider/assignees (*see* 11 NYCRR 65-3.11 [a]), or is restricted to claims submitted directly by the injured persons. East Acupuncture contends that because 11 NYCRR 65-3.9 (a) uses the terms "applicant" and "assignee," the omission of the term "assignee" in 11 NYCRR 65-3.9 (c) evidences that the interest toll applies only to claims submitted by the injured persons. In contrast, Allstate argues that, for interest tolling purposes, there is no reason to distinguish between claims submitted by provider/assignees and claims submitted by the injured persons because the term "applicant" is used in 11 NYCRR 65-3.9 (c) to refer generically to both provider/assignees and injured persons. In an amicus curiae brief, the Superintendent argues that the term "applicant," as used in the no-fault regulations, encompasses provider/assignees and that this interpretation is consistent with prior case law and the expression of the Superintendent's intent.

In matters of statutory and regulatory interpretation, "legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [enactors]" (*Matter of ATM One v Landaverde*, 2 NY3d 472, 476-477 [2004], quoting *Mowczan v Bacon*, 92 NY2d 281, 285 [1998] [internal quotation marks omitted]).

> "Legislative intent may be discerned from the face of a statute, but an apparent lack of ambiguity is rarely, if ever, conclusive . . . Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (*Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]; *see Matter of ATM One v Landaverde*, 2 NY3d at 477; *Mowczan v Bacon*, 92 NY2d at 285).

Moreover, "regulations . . . should be construed to avoid objectionable results" (*Matter of ATM One v Landaverde*, 2 NY3d at 477).

Because the statutory text is the clearest indicator of legislative intent, "the starting point in any case of interpretation

must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see Matter of Jansen Ct. Homeowners Assn. v City of New York*, 17 AD3d 588, 589 [2005]). "Pursuant to the maxim of statutory construction expressio unius est exclusio alterius, 'where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded' " (*Matter of Town of Eastchester v New York State Bd. of Real Prop. Servs.*, 23 AD3d 484, 485 [2005], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240). Nonetheless, "a statute or ordinance must be construed as a whole and . . . its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]; *see Matter of Notre Dame Leasing v Rosario*, 2 NY3d 459, 464 [2004]; *Levine v Bornstein*, 4 NY2d 241, 244 [1958]).

Responsibility for administering the Insurance Law rests with the Superintendent, who has broad power to interpret, clarify, and implement the legislative policy by promulgating regulations (*see* Insurance Law § 301; *Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d 196, 201 [2007]; *Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d at 863-864). "[T]he interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable" (*Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d 337, 342 [2004] [internal quotation marks omitted]; *see Matter of Brooklyn Assembly Halls of Jehovah's Witnesses, Inc. v Department of Envtl. Protection of City of N.Y.*, 11 NY3d 327, 334 [2008]; *Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*, 5 NY3d 499, 506 [2005]). However, "courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language" (*Matter of Visiting Nurse Serv. of N.Y. Home Care*, 5 NY3d at 506).

Applying these principles to the matter at bar, we find that the term "applicant" as used in 11 NYCRR 65-3.9 (c) refers to both provider/assignees and injured persons. Since the Superintendent's parallel interpretation is neither irrational nor unreasonable, it is entitled to deference (*see Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d at 342; *Matter of Visiting Nurse Serv. of N.Y. Home Care v*

*New York State Dept. of Health*, 5 NY3d at 506). In light of the fact that the no-fault regulations do not provide a general definition of the term "applicant," the plain meaning of this term in 11 NYCRR 65-3.9 (c) would seem to refer to any entity, whether an injured person or a provider/assignee, who submits a claim or applies to an insurance company for no-fault benefits (*see Majewski*, 91 NY2d at 583). Indeed, in some instances, these regulations use the term "applicant" as a generic reference to both provider/assignees and injured persons (*see e.g.* 11 NYCRR 65-3.2 [b]; 65-3.3 [a]; 65-4.2 [b] [1] [i]); while, in other instances, the term "applicant" is used to refer specifically to injured persons (*see e.g.* 11 NYCRR 65-3.5 [e]; 65-3.8 [g]). However, construing the no-fault regulations as a whole and considering their various sections in reference to each other, as we must (*see People v Mobil Oil Corp.*, 48 NY2d at 199), the Superintendent's interpretation of the term "applicant," as used in 11 NYCRR 65-3.9 (c), as a generic reference to both provider/assignees and injured persons is entitled to deference not only because the no-fault regulations do not use this term consistently and exclusively as a reference to injured persons, but because the Superintendent's definition is consistent with the manner in which it is used in certain other instances.

The Superintendent's interpretation of 11 NYCRR 65-3.9 (c) is additionally consistent with the spirit and purpose of the No-Fault Law (*see generally Matter of ATM One v Landaverde*, 2 NY3d at 477). One of the primary aims of the no-fault system is to ensure prompt payment of claims (*see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d at 860; *Cardinell v Allstate Ins. Co.*, 302 AD2d at 774). The interest which accrues on overdue no-fault benefits at a rate of two percent per month (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.9 [a]) is a statutory penalty designed to encourage prompt adjustments of claims and inflict a punitive economic sanction on those insurers who do not comply (*see Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 224 [1986]; *Cardinell v Allstate Ins. Co.*, 302 AD2d at 774). Interpreting 11 NYCRR 65-3.9 (c) as applying the interest toll only to injured persons would allow a provider/assignee, who delays commencing legal action or requesting arbitration on denied claims, to continue to accrue interest pursuant to Insurance Law § 5106 (a) throughout this period of delay. Rewarding such delay with what amounts to essentially a windfall of punitive interest payments would be at odds with the legislative goal of promptly resolving no-fault claims.

## IV.

Finally, the Superintendent's interpretation conforms with the general principle that an assignee stands in the shoes of an assignor and thus acquires no greater rights than those of its assignor (*see Matter of International Ribbon Mills [Arjan Ribbons]*, 36 NY2d 121, 126 [1975]; *Long Is. Radiology v Allstate Ins. Co.*, 36 AD3d 763, 765 [2007]; *TPZ Corp. v Dabbs*, 25 AD3d 787, 789 [2006]). " 'It is axiomatic concerning legislative enactments in derogation of common law . . . that they are deemed to abrogate the common law only to the extent required by the clear import of the statutory language' " (*Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 206 [2004], quoting *Morris v Snappy Car Rental*, 84 NY2d 21, 28 [1994]). Under the interpretation of 11 NYCRR 65-3.9 (c) urged by East Acupuncture, a provider/assignee would not be subject to the toll on the accrual of statutory interest provided for by that regulation even though the toll would apply to its assignor, the injured person, if the injured person had submitted the same claim for no-fault benefits to the insurer itself. Because such an abrogation of the common law is not required by the language of 11 NYCRR 65-3.9 (c) (*see Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d at 206), the Superintendent's contrary interpretation is neither irrational nor unreasonable and is, again, entitled to due deference (*see Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d at 342).

## V.

We further find that East Acupuncture's reliance upon *LMK Psychological Servs., P.C. v State Farm Mut. Auto. Ins. Co.* (46 AD3d 1290, 1291-1292 [2007], *lv granted* 10 NY3d 717 [2008]) is misplaced. In *LMK*, the Appellate Division, Third Department rejected the no-fault insurer's contention that the trial court improperly awarded interest to the provider/assignees by not tolling interest for the period between 30 days after they received the claim denial until commencement of their action (*see LMK Psychological Servs., P.C.*, 46 AD3d at 1291). Although noting that this contention was not raised by the insurer in the lower court and thus unpreserved for appellate review, the Appellate Division, Third Department went on to conclude that the interest toll only applied to no-fault claims timely denied by the insurer (*id.* at 1291-1292). Likewise, East Acupncture's reliance on *New York & Presbyt. Hosp. v Allstate Ins. Co.* (30 AD3d at 494) is also misplaced.

This ruling, enunciated as dicta, is inapposite since it did not confront the precise issue presented by this appeal: whether the term "applicant," as used in 11 NYCRR 65-3.9 (c), refers to both injured persons and provider/assignees (*see* Sabella and Lustig, Outside Counsel, *Accrual Date for Payment of Interest in No-Fault Cases*, NYLJ, May 29, 2008, at 4, col 4).

## VI.

In conclusion, we hold that the term "applicant," as used in 11 NYCRR 65-3.9 (c), refers to both provider/assignees and injured persons and that the toll on statutory interest provided for therein applies to no-fault claims submitted to insurers by both types of claimants. Accordingly, the Appellate Term properly determined that interest pursuant to Insurance Law § 5106 (a) did not begin to accrue on the claims that were untimely denied by Allstate until East Acupuncture filed its complaint. Thus, the Appellate Term properly reversed the order of the Civil Court and remitted the matter for the new interest calculation.

East Acupuncture's remaining contentions are either not properly before this Court or without merit.

## VII.

In accordance with the foregoing, the order dated January 3, 2007 is affirmed.

MASTRO, J.P., MILLER and McCARTHY, JJ., concur.

Ordered that the order dated January 3, 2007 is affirmed, with costs.