[910 NYS2d 454]

Town of Huntington, Respondent, v County of Suffolk, Appellant.

Second Department, October 19, 2010

## APPEARANCES OF COUNSEL

*Christine Malafi, County Attorney*, Hauppauge (*Ann K. Kandel* of counsel), for appellant.

*Bartlett, McDonough, Bastone & Monaghan, LLP*, White Plains (*Edward J. Guardaro* and *Gina Bernardi DiFolco* of counsel), for respondent.

*Stephen J. Acquarios*, Albany (*Robert W. Gibbon* of counsel), for New York State Association of Counties, amicus curiae.

## OPINION OF THE COURT

BALKIN, J.

The counties, cities, towns, and villages of the State of New York often compete for limited governmental resources in order to maintain, repair, and improve the road infrastructure within their usually coexistent geographical jurisdictions. The issue of apparent first impression presented on this appeal is whether the defendant County of Suffolk has the responsibility, duty, and obligation to improve, maintain, and repair certain roads within the boundaries of the plaintiff Town of Huntington, which were included on the official map of the Suffolk County Road System in the 1930s, but maintained for decades thereafter by the Town. Based on the applicable statutory provisions and their legislative history, we answer this question in the affirmative.

### I.

The following facts are essentially undisputed. In 1929, during the onset of the Great Depression, the New York State Aid Fund (hereinafter the State Aid Fund) was created, inter alia, as a funding mechanism for municipalities to stimulate local employment through the construction and improvement of town roadways. Before the State Aid Fund was established, the County Superintendent of Highways of each county locally supervised, controlled, and managed its own "County Road Fund," consisting of funds transmitted to the counties by the State to finance the construction, maintenance, and repairs of town roads pledged into the particular County Road System (*see* Highway Law former § 320-b [1]; *County of Nassau v Luessen*, 69 Misc 184, 185 [Sup Ct, Nassau County 1910]), including the County of Suffolk.

The phrase "County Road System" can be traced back at least as far as 1893, when chapter 333 of the Laws of 1893 provided that any county "may . . . adopt the county road system" and shall "cause to be designated as county roads such portions of the public highways in such county not within an incorporated village or city as they shall deem advisable" (L

1893, ch 333, sec 1, § 54; *see* L 1914, ch 61, sec 1, § 320-a). One of the earliest inclusions into the Suffolk County Road System was made by resolution of the County Board of Supervisors dated August 23, 1929, which designated a certain portion of roads within the Town's boundaries for construction or improvement, including County Road 5 (known as Ruland Road and Colonial Springs Road), and County Road 9 (known as Cuba Hill Road), as "roads to be designated under" the County Road System. Other resolutions dated January 27, 1930, followed, designating other Town roadways, including County Road 4 (known as Commack Road), another portion of County Road 9 and County Road 2 (known as Dixon Avenue and Lower Half Hollow Road, respectively), as being "roads in Suffolk County . . . designated for construction with moneys from the State Aid Fund," pursuant to Highway Law former § 320-b (now Highway Law § 115). The County enacted those resolutions pursuant to Highway Law former § 320-b (6), which was added to the Highway Law by chapter 362 of the Laws of 1929, known as the Lowman Act.

The Suffolk County Road System was formally established by County resolution dated February 24, 1930, and approved by the New York State Commissioner of Highways on May 5, 1930. The County Road System was then placed on the Official Highway Map adopted and approved by the County pursuant to Highway Law, article 6, § 115 (former § 320-b), and "designated for construction with monies from the County Road Fund." The record contains evidence that, historically, county roads have been maintained and repaired through a patchwork of agreements between the towns (in which the roads are located), town funds, county funds, and state funds (*see* Highway Law § 114).

With the passage of time, additional roads and streets within the Town were constructed, improved, and added to the official map of the County Road System, including County Road 28 (known as New Highway), and County Road 35 (known as Deerpark Avenue), in 1978 and between 1936 and 1966, respectively. Periodically, the County passed resolutions removing certain roads from the County Road System pursuant to Highway Law § 115-b, but the particular roadways at issue here have remained on the official County map. In accordance with these resolutions, the County does not dispute that County Roads 2, 4, 5, 9, 28 and 35, which are within the Town's boundaries, were placed in the County Road System. Rather, the issue on this appeal is who should bear the fiscal responsibility associated with the

roadways being pledged and accepted into the County Road System.

The current dispute came into focus in 2003 as a result of the commencement of a personal injury action entitled *Hastings v County of Suffolk* (Sup Ct, Suffolk County, index No. 29367/03) (hereinafter the *Hastings* case), involving a motor vehicle accident where Katie Hastings sustained injuries and damages allegedly as a result of a defective condition on County Road 4, which is one of the County Roads at issue herein, located within the confines of the Town. An issue of law arose as to whether it was the ultimate responsibility of the Town or the County to maintain and repair that road, which was included on the official map of the County Road System.

By summons and verified complaint dated September 7, 2005, the Town commenced the instant action against the County, seeking (1) a judgment declaring that the County "has the responsibility, duty, and obligation to improve, maintain and repair the aforementioned roads [County Roads] 2, 4, 5, 9, 28 and 35, as part of the Suffolk County Road System pursuant to Highway Law [§ ] 3 and Article 6," (2) a permanent injunction directing the County to assume the responsibility to perform improvements, maintenance, and repairs on those roads, (3) a permanent injunction barring the Town from issuing work permits with respect to those roads and expending any money for their improvement, maintenance, and repair, and (4) an award to the Town of all costs and disbursements incurred in this action, including, but not limited to, reasonable attorneys' fees. In its complaint, the Town acknowledged that it had issued work permits for work on these roads for several years and, in fact, paid for the performance of those improvements, maintenance, and repairs. However, the Town alleged that, since the County had never abandoned or removed from the jurisdiction of the County Road System any portion of the aforementioned County Roads, the Town had "no responsibility, duty or obligation to continue to fund improvements, maintenance or repair work" of the roads pursuant to the provisions of the Highway Law.

Simultaneously therewith, by order to show cause dated September 9, 2005, the Town moved for a preliminary injunction pursuant to CPLR 6301, temporarily and immediately directing the County, inter alia, "to assume control of the aforementioned roads with respect to the issuance of permits for the performance of improvement, maintenance, repair and/or

other work," and to stay prosecution of the *Hastings* case. In an affidavit in support, the Town reiterated that, despite its improvements, maintenance, and repairs of the aforementioned roads, the County was, in effect, the responsible party, because the roads were part of the County Road System, and there was no evidence that they had been abandoned by the County or reverted to the Town via the statutory procedure for removal from the County Road System, after notice, pursuant to Highway Law § 115. The Town also acknowledged that in 2003 it had unsuccessfully requested that the County assume responsibility for maintenance and repairs of said roads, and that the Town never received any money from the County to maintain those roads.

With respect to the Town's request for a preliminary injunction during the pendency of the action, the Town argued that it would succeed on the merits given the clear language of Highway Law § 3 and article 6 which made the County ultimately responsible for the subject County Roads, and that the Town has suffered, and will continue to suffer, irreparable injury through the expenditure of large amounts of money and municipal resources for those repairs and improvements, which would never be recovered from the County, thus balancing the equities in favor of the Town. Finally, the Town requested the stay of the *Hastings* case pending the ultimate disposition of this case.

Following oral argument by the parties conducted on September 9, 2005, limited to the Town's request for a temporary retraining order against the County, contained in the order to show cause, the Supreme Court denied that request.

In lieu of an answer, the County cross-moved to dismiss the Town's complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, on the grounds that the ownership, maintenance, and repair responsibility for these roads has historically remained with the Town, whether the roads were pledged to the County Road System or not; and pursuant to CPLR 3211 (a) (4) on the ground that the *Hastings* case constituted a prior action which involved the same cause of action.[1] In its affirmation, the County further contended that, with respect to County Roads 4, 5, 28, and 35, the Town made several prior

---

1. The County's past contention that the instant action should be dismissed pursuant to CPLR 3211 (a) (4), on the ground that there was "another action pending between the same parties for the same cause of action" is no longer an issue on this appeal, since the other action, *Hastings v County of Suffolk,* was settled and concluded in 2007.

demands for maintenance to the County, which were denied, but that the Town had failed to timely commence a proceeding pursuant to CPLR article 78 in the nature of mandamus against the County within the applicable four-month statute of limitations following the denial, which consequently now barred the Town from proceeding with this action. With respect to County Roads 2 and 9, the County alleged that the Town's claims were nevertheless barred by the laches doctrine based on the Town's performance of the maintenance and repairs of the roadways without any County assistance for several decades.

In support of its claim that the complaint should be dismissed, in effect, pursuant to CPLR 3211 (a) (5) as time-barred, the County specifically noted that the Town requested help from the County in 1994 in maintaining County Road 4, in 2003 in maintaining County Road 5, in 1989 in remedying flooding on County Road 35, and in 1996 in maintaining County Road 28, all of which were denied by the County.

In further support of the County's position, the County pointed out that the "[t]own roads that are pledged into the County Road System remain under the ownership of the Town that pledged them," and as such, the Town "has the sole obligation to pay the costs associated with the repair and maintenance of the County Roads that exist within its borders." According to the County, it merely serves as a conduit whose "sole mandatory responsibility is to distribute funds that are received in the County Road Fund for the maintenance of the local roads in the County Road System."

By affidavit in opposition to the cross motion, the Town asserted that the County's responsibility for County roads is "clearly defined in Highway Law § 3 and Article 6 despite [the fact] that the Town has accepted the responsibility for a number of years. Since the statute is plain on its face, the [Town argued that the] County can no longer avoid its duty to maintain the County Roads," noting that pursuant to Highway Law § 102 (1), the County has supervisory authority over all roads in the County Road System. The Town further claimed that the action was not time-barred by the four-month statute of limitations for mandamus proceedings, because the Town was clearly and expressly seeking a judgment declaring the County's "ongoing" liability for the County roads.

In a reply affirmation, the County reiterated its arguments that the action was time-barred by the four-month statute of limitations and the doctrine of laches, and that the Town is

solely responsible for the improvement, maintenance, and repair of the subject County Roads. Following this reply, the parties engaged in years of extensive discovery, including the filing of several requests under the Freedom of Information Law against the County, which yielded thousands of resolutions, memoranda, correspondence, and other records, documenting the history of the County Road System.

In the order appealed from, the Supreme Court denied that branch of the Town's motion which was for a preliminary injunction pursuant to CPLR 6301, and determined that the action was not in the nature of a mandamus proceeding, but was an action for a declaratory judgment, "which is undisputably a proper vehicle for determining the legality or meaning of a statute where no question of fact is involved." The Supreme Court further held that the action was commenced within the applicable statute of limitations' period, and unaffected by laches. After converting the County's cross motion to dismiss into a motion for summary judgment, given the voluminous submissions, the lack of disputed factual issues, and the issue of law presented, the Supreme Court denied the County's cross motion, and, upon searching the record, awarded summary judgment to the Town, declaring that "as set forth in Highway Law § 3 and Article 6, the County is responsible for repairing, maintaining and reconstructing" the roads in question, and "no such statutory burden is imposed upon the Town of Huntington for the repair and maintenance of the afore-cited roadways." This appeal by the County ensued, and we affirm the order insofar as appealed from.

## II.

On appeal, the County maintains that the Supreme Court erred in determining that the instant action was not barred by the statute of limitations for proceedings pursuant to CPLR article 78 in the nature of mandamus (*see* CPLR 7801), or by the laches doctrine. Specifically, the County alleges that with respect to County Roads 4, 5, 28 and 35, the Town had previously demanded that the County maintain those roads—which demands were refused by the County—giving rise to a mandamus claim; therefore, the action was time-barred with respect to those County Roads pursuant to the four-month statute of limitations set forth in CPLR 217. With respect to County Roads 2 and 9, the County asserts that the Town's claim is barred by laches. The Town counters that the action clearly and expressly

seeks a declaratory judgment and, therefore, is not time-barred. We agree with the Supreme Court and the Town.

The CPLR does not provide a specific statute of limitations for declaratory judgment actions (*see New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 201 [1994]; *Solnick v Whalen*, 49 NY2d 224, 229 [1980]; *Stein v Garfield Regency Condominium*, 65 AD3d 1126, 1126-1127 [2009]). Instead, in order to determine the applicable statute of limitations, the court must determine whether the "rights of the parties sought to be stabilized in the action for declaratory relief are, or have been, open to resolution through a form of proceeding for which a specific limitation period is statutorily provided," and, in the event no other form of proceeding exists, the six-year statute of limitations set forth in CPLR 213 (1) should be applied (*Solnick v Whalen*, 49 NY2d at 229-230; *see Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 815 [2003], *cert denied* 540 US 1017 [2003]; *Matter of Jones v Amicone*, 27 AD3d 465, 469 [2006]).

At the same time, where a municipality pursues a policy which the plaintiff claims violates a statute or regulation, each particular violation is subject to review pursuant to CPLR article 78 and starts the statute of limitations running anew (*see Tompkins v State of New York*, 7 NY2d 906, 907 [1960]). If a continuing wrong is alleged, the action is not time-barred because the cause of action continues to accrue anew, each day the wrong is perpetrated (*id.; see Matter of Askew v New York City Dept. of Envtl. Protection*, 24 AD3d 544, 545 [2005]), although the plaintiff's damages, if any, are limited to damages incurred during the limitations' period (*see Kaymakcian v Board of Mgrs. of Charles House Condominium*, 49 AD3d 407 [2008]).

On the other hand, even if no statute of limitations bars a claim for damages, such relief may still be barred by the doctrine of laches (*see Saratoga Chamber of Commerce v Pataki*, 100 NY2d at 816; *Kruse v Town of Ashford*, 174 Misc 367 [Sup Ct, Erie County 1940]), which is defined "as an equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party" (*Saratoga Chamber of Commerce v Pataki*, 100 NY2d at 816, citing *Matter of Barabash*, 31 NY2d 76, 81 [1972]; *see Saunders v City of New York*, 283 AD2d 166, 168 [2001]). However, "[t]he mere lapse of time, without a showing of prejudice, will not sustain a defense of laches" (*Saratoga Chamber of Commerce v Pataki*, 100 NY2d at 816; *see Galyn v Schwartz*, 56 NY2d 969, 972 [1982]; *Sorrentino*

*v Mierzwa*, 25 NY2d 59, 63 [1969]; *Skrodelis v Norbergs*, 272 AD3d 316 [2000]).

■ ■ Applying these principles to the matter at bar, the instant action by the Town is not time-barred by the statute of limitations or barred by the doctrine of laches. The complaint seeks a statutory interpretation of the Highway Law, alleging a continuing wrong and the need for an injunction, that is, the County's purported failure to fulfill its statutory duty to maintain the County Road System (*see Tompkins v State of New York*, 7 NY2d at 907; *Matter of Askew v New York City Dept. of Envtl. Protection*, 24 AD3d at 545; *Saunders v City of New York*, 283 AD2d 166 [2001]). This issue, as clearly set forth in the complaint, constitutes a claim for declaratory and injunctive relief governing future conduct by the County; the Town is not seeking damages for past conduct by the County, or for the reimbursement of the expenses previously incurred by the Town in its maintenance and repairs of the roads at issue (*see Kaymakcian v Board of Mgrs. of Charles House Condominium*, 49 AD3d at 407). As such, that relief cannot be afforded under CPLR article 78, and its limitations period is inapplicable.

■ Although the County relies upon certain cases where a municipality's refusal to fulfill ministerial obligations with respect to roads may be challenged in a mandamus proceeding (*see Matter of Village of Dresden v County of Yates*, 302 NY 415, 416 [1951]), the cases cited by the County dealt exclusively with towns seeking to abandon, or disavow, any obligation to maintain a road (*see Matter of Newton v Town of Middletown*, 31 AD3d 1004, 1007 [2006] [town sought to shorten road]; *Matter of Aldous v Town of Lake Luzerne*, 281 AD2d 807 [2001] [whether 1935 resolution abandoning town road was valid]; *Schulz v Town Bd. of Town of Queensbury*, 253 AD2d 956 [1998] [whether 1995 resolution closing town road was valid]; *Matter of Van Aken v Town of Roxbury*, 211 AD2d 863 [1995] [town claims partial abandonment of town road]). These cases, however, are distinguishable from the instant controversy, since the allegations against the County involve more than ministerial duties, and there is no claim that the County abandoned the roadways in question, or made a determination that they are no longer part of the County Road System. Thus, a mandamus proceeding would not apply to the instant allegations in the complaint.

■ Moreover, there was no apparent prejudice to the County, as required by the laches doctrine (*see Saratoga Chamber of*

*Commerce v Pataki*, 100 NY2d at 816). The fact that the Town maintained the subject County Roads in the County Road System for decades, when it may not have been required to do so, did not prejudice the County (*id.*). Therefore, it cannot be said that the Town's cause of action for a declaratory judgment is time-barred by the four-month limitations period, in whole or in part, or barred by laches (*id.* at 816; *Galyn v Schwartz*, 56 NY2d at 972).

### III.

Since there is no limitations period impediment or laches bar, we review the County's contention that the Supreme Court erred in concluding that the County is charged with the responsibility, duty, and obligation to improve, maintain, and repair the County Roads in question, which are included on the official map of the County Road System. As amicus curiae, the New York State Association of Counties advocates, inter alia, that the Highway Law never envisioned the transfer of ownership or control of the Town roads to the County. In response, the Town argues that the provisions of the Highway Law dictate the County's responsibilities, and the Town has no responsibility to maintain those roads. A historical perspective, examination of legislative intent, and the applicable statutes are needed in order to answer this question.

In matters of statutory and regulatory interpretation, "legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [enactors]" (*Matter of ATM One v Landaverde*, 2 NY3d 472, 477 [2004] [internal quotation marks omitted]; *see Mowczan v Bacon*, 92 NY2d 281, 285 [1998]; *see East Acupuncture, P.C. v Allstate Ins. Co.*, 61 AD3d 202, 207 [2009]). "Legislative intent may be discerned from the face of a statute, but an apparent lack of ambiguity is rarely, if ever, conclusive . . . Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (*Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]; *see Matter of ATM One v Landaverde*, 2 NY3d at 477). Since, the statutory text is the clearest indicator of legislative intent, "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see Matter of Jansen Ct. Homeowners Assn. v City of New York*, 17 AD3d 588, 589 [2005]).

A. Relevant History of the Highway Law

Pursuant to chapter 30 of the Laws of 1909, prior versions of the Highway Law dating back as far as 1797 were repealed (*see* L 1909, ch 30, § 358), and replaced with a new version (*see County of Nassau v Luessen*, 69 Misc at 185). In the new 1909 version, Highway Law former § 3 divided highways into three classes (except for certain specified roads not relevant here): (1) State highways, "constructed or improved under this chapter at the sole expense of the state" (2) County highways, "heretofore or hereafter constructed or improved at the joint expense of state, county and town, as provided by law" and (3) Town highways "constructed, improved or maintained by the town with the aid of the state, under the provisions of this chapter, including all highways in towns, outside of incorporated villages . . . which do not belong to either of the two preceding classes."

These three categories of highways were to be constructed and improved through a combination of County and Town funds pursuant to Highway Law former § 320, entitled "[c]onstruction or improvement of highways by county and town," which provided, in pertinent part:

> "The board of supervisors of a county may provide for the construction or improvement of a highway or section thereof in one or more towns of the county at the joint expense of the county and town, as provided in this section . . . Such highways, when completed and accepted by the board of supervisors, *shall be thereafter repaired and maintained at the sole expense of the towns in which they are located, unless the board of supervisors shall apportion a share of the expense thereof upon the county"* (emphasis added).

As such, the construction and improvements of local highways and roads were the joint responsibility of both the particular town and county (*see* L 1914, ch 61; L 1909, ch 30, § 320), with the maintenance of those highways resting with the town in which they were located (*see* L 1909, ch 30, §§ 172, 320). Roadways constructed pursuant to Highway Law former § 320 would fall within the definition of a "County highway" set forth in Highway Law former § 3, the maintenance of which was the Town's responsibility.

By chapter 567 of the Laws of 1910, Highway Law former § 3 was amended to add a fourth class of highways, referred to as "County Roads," and defined as "those designated as such

under a general or special law and constructed, improved, maintained and repaired by the county as such in counties in which the county road system has been or may be adopted" (*see* Highway Law former § 3 [3]). Pursuant to Highway Law former § 178, the State was obligated to share in the expense of maintaining those "County Roads."

Chapter 61 of the Laws of 1914 added a new section 320-a, which was similar to section 320, but added language that where a County's Board of Supervisors provided for the construction or improvement of a highway or section thereof in a town at the joint expense of the county and the town, the County "may prepare a map of a definite system of county roads for the county for such improvement." Highway Law former § 320-b (5) provided that state aid, county money, and money collected from the towns were to be placed in a common fund "for the construction and reconstruction of a county road system" (*see* Highway Law former § 121, L 1929, ch 362). In order to access those funds, Highway Law former § 320-b (6) further provided that each county, including the County herein, was required to file the map approved by its Board of Supervisors, "showing a proposed county road system for such county to be constructed with moneys from the state aid fund."

With the enactment of these 1914 statutes as amended, most notably by the Laws of 1929, the State Legislature attempted to shift the responsibilities for the maintenance of certain mapped County Roads from the towns to the particular counties in which they were located (*see* Highway Law former §§ 167, 320[4], L 1929, ch 362). In fact, Highway Law former § 320-b (12) explicitly so provided, in pertinent part:

> "*The maintenance of roads hereafter constructed under the provisions of this section shall be under the supervision of the county superintendent of highways as part of the county road system. The cost thereof shall be paid by the county unless the superintendent shall consent to its payment from the state aid fund, in which case it may be paid from such fund;* when not so paid, by the county or from such fund, the county is hereby authorized to apportion such cost between it and the town or towns in which such road or highway is located" (emphasis added).

The related Bill Jacket for Laws of 1929, although sparse, contains a memorandum from the New York State Superintendent of Public Works, stating that the positive effect of the bill

was to give the State Department of Public Works "positive control over the construction of county roads." That memorandum further noted that County Roads "still have to be approved by the [county] boards of supervisors, although the counties are not required to participate in their cost" (Mem of Supt of Dept of Public Works, Bill Jacket, L 1929, ch 362, at 3).

Relevant to the instant matter, by chapter 770 of the Laws of 1930, Highway Law former § 320-b (12) was repealed and replaced with a new Highway Law former § 320-b (12), which provided, in pertinent part:

> "Notwithstanding any other provisions of law, *the maintenance of such improved roads under the provisions of this section shall be the responsibility of the county under the jurisdiction of the county superintendent of highways. Notwithstanding any other provisions of law, the cost of such maintenance may be paid by the county from any funds in such county that are available and that may be legally used for highway or road purposes or from county funds raised,* provided and appropriated therefor, in the same manner as it raises, provides and appropriates moneys for the construction of a road or highway under the provisions of sections three hundred and twenty and three hundred and twenty-a of this chapter; or, notwithstanding any other provision of law, the cost of such maintenance may be paid from the county road fund if approved by the superintendent of public works" (emphasis added).

The Bill Jacket for Laws of 1930, chapter 770, contains a memorandum from the State Department of Public Works, Division of Highways, stating that these amendments permitted "state aid fund moneys to be used for the maintenance of the improved roads on the county road system" (Mem of Dept of Public Works, Bill Jacket, L 1930, ch 770, at 4). The current form of Highway Law former § 320-b (12), with essentially the same wording, may be found in Highway Law § 129.

One of the earliest interpretations of this statute can be found in *Macrum v Hawkins* (261 NY 193, 207 [1933]), where the Court of Appeals, in the context of a bridge construction project in the Town of Huntington in Suffolk County, noted that pursuant to Highway Law former § 320-b, the State and County contribute funds to the county road fund, "to empower the [county]

board of supervisors to build county roads and receive State aid therefor." The Court further noted that, pursuant to the statutory scheme, there were then only county highways under Highway Law former § 320, town highways constructed with county aid pursuant to Highway Law former § 320-a, and County Roads constructed pursuant to Highway Law former § 320-b (*id.* at 206). As explained by the Appellate Division, Third Department, in *Hemmingway v Town of Dannemora* (269 App Div 221, 223 [1945]), the "[r]esponsibility for the maintenance of highways improved with State and county aid under former section 320-b, was not cast upon the county until" the enactment of chapter 362 of the Laws of 1929.

By chapter 763 of the Laws of 1933, "county highways" were officially abolished so that this designation no longer existed, and was supplanted by the term "County roads," which were defined as "those roads constructed, improved, maintained and repaired under section three hundred twenty-b of this chapter and roads constructed or improved under a general or special law which are maintained by the county." Thus, this legislative act created two types of County Roads, that is: roads constructed pursuant to Highway Law former § 320-b, and roads constructed or improved under general or special law, which are maintained by the County. The roads in issue in this case are roads constructed pursuant to Highway Law former § 320-b (now Highway Law art 6) as distinguished from roads constructed or improved under general or special law (*see Silver v Cooper*, 199 AD2d 255, 256 [1993]; *People v Wolf,* 153 Misc 230 [1934]).[2]

The Highway Law was reenacted in substantially its current form by Laws of 1936, chapter 63. Highway Law former § 320-b became Highway Law article 6 relating to County Roads,

---

2. It should be noted that in the County of Nassau, County Roads are constructed or improved under special law, first enacted in 1893 when Nassau County was still part of Queens County; therefore, all County Roads in Nassau County are maintained by that county (*see Silver v Cooper,* 199 AD2d at 256; *People v Wolf,* 153 Misc at 230). That responsibility has been codified in Nassau County Administrative Code § 12-4.0 (L 1939, chs 272, 701-709, as amended), which provides Nassau County with sole jurisdiction over County Roads, and that the expenses of constructing, maintaining, and improving such County Roads shall be a county charge. The same is not necessarily true of Suffolk County. The Town points to no special law whereby Suffolk County assumed sole jurisdiction over the subject County Roads, and Suffolk County Administrative Code, art VIII, § A8-1, dealing with public works and county roads, does not contain such a provision. However, subdivision (B) thereof states that the County Department of Public Works shall let contracts for the construction, maintenance, or repair of county roads pursuant to the Highway Law.

which were defined in Highway Law § 3, as it is in its current form: "those roads constructed, improved, maintained and repaired under article six of this chapter and roads constructed or improved under a general or special law, which are maintained by the county."

B. Current Highway Law

Under current law originally enacted in 1936, County Roads are governed by article 6 of the Highway Law and town highways are governed by article 8 of the Highway Law. In particular, article 6 includes Highway Law § 114, dealing with the County Road Fund, which can include moneys collected from the towns (*see* Highway Law § 114 [1]). Upon authorization of the County Board of Supervisors, County Road Funds which are not the proceeds of borrowing may be used "for any public highway, traffic or transportation purpose of the county" (*see* Highway Law § 114 [5]). Similar to its historic counterpart, Highway Law § 115 provides for the preparation of a map of a proposed County Road System. Highway Law § 129 expressly provides that "[n]otwithstanding any other provision of law, the maintenance of roads improved" pursuant to Highway Law article 6 "shall be the responsibility of the county under the jurisdiction of the county superintendent of highways."

Further, Highway Law § 115-a, dealing with "Abandonment of unused portions of town highways on county road system" provides, in pertinent part:

> "Whenever a county road or part thereof constructed as part of the county road system deviates from the line of an existing town highway, or from the line of a former town highway within the limits of an incorporated village, as shown on the map of the county road system, the board of supervisors by resolution duly adopted upon the recommendation of the county superintendent of highways, and pursuant to a written agreement with the town board or village board of trustees, or in the event such an agreement cannot be reached with the approval of the commissioner of transportation, may abandon to the town or the incorporated village as the case may be for future maintenance, that part of the town highway or former town highway within the limits of an incorporated village not improved and modify the map of the county road system accordingly. *Th[at] portion of any town highway or former*

*town highway within the limits of an incorporated village excluded from the county road system shall be maintained by the town or village in which it is located"* (emphasis added).

Similarly, Highway Law § 115-b provides a process for the removal by the County of a road from the County Road System, whereupon "said road or part of said road shall thereupon revert to the town or towns or village or city or cities wherein said road or part of said road is situated and *thereafter shall be maintained by said town or towns or village or city or cities in the same manner as other town highways and village streets and city streets are maintained"* (emphasis added).

■ Interpreting these statutory provisions herein, we conclude that the subject roads are County Roads within the meaning of Highway Law § 3 (4), which are expressly the responsibility of the County. The historical perspective provided demonstrates that the State Legislature shifted the responsibilities for the maintenance, repair, and improvement of certain mapped County Roads from the towns to the counties in which the roadways were located, while leaving certain town highways under the local town's responsibility (*compare* Highway Law § 3 [4]; § 117, *with* Highway Law §§ 111, 140, 194, 195, 219). The County Roads in question were explicitly pledged and placed on the County Road System and official map pursuant to Highway Law former § 320-b, which statute is tracked in the language of the current Highway Law.

As previously quoted, the current Highway Law defines County Roads as "those roads constructed, improved, maintained and repaired under article six of this chapter" (Highway Law § 3 [4]; *see* Highway Law § 219 [1]). Indeed, this is the exact definition of County Roads first used in chapter 763 of the Laws of 1933, except for the substitution of "article six" for "section three hundred twenty-b," when the maintenance responsibility of the roadways passed from the Town to the County. Since the County Roads in issue were added to the County Road System pursuant to Highway Law former § 320-b which later became article 6, they are County Roads. That designation in turn triggered "the responsibility of the county under the jurisdiction of the county superintendent of highways" for "the maintenance of roads improved" or constructed

pursuant to Highway Law article 6 (Highway Law § 129).[3] Giving effect to the plain meaning of these statutory provisions, the roadways at issue are County Roads to be maintained by the County.

In fact, other Highway Law provisions, built upon the foregoing, add further responsibilities to the County over the County Roads placed in the County Road System. For example, pursuant to Highway Law § 102 (1), the County Superintendent shall "[h]ave supervision of all roads and bridges comprising the county highway system, together with any other roads . . . for which responsibility is imposed upon the county under any lawful agreement made by the county or under any other provision of law." Also, it is the County who is responsible for the acquisition of lands, rights-of-way, and materials for the construction and reconstruction of roadways within the County Road System [reflecting resolutions for land purchases, engineering reports, materials and construction contracts, etc., for County Road 2, 3 and 48]) (see Highway Law §§ 117, 118, 120, 125, 127, 134). Additionally, the County may be liable for negligence and wrongful death claims for its failure to properly maintain and/or repair County Roads (see Highway Law § 139 [1]; § 137).

This is echoed in the Vehicle and Traffic Law and General Municipal Law, which "give towns certain rights with respect to all roads, including County roads, [but] none of the statutes establishes an affirmative duty of the Town to maintain any County road" (Ernest v Red Cr. Cent. School Dist., 93 NY2d 664, 675 [1999]; see Silver v Cooper, 199 AD2d at 256). Under current legal precedent, the County's general supervisory and maintenance authority extends to County Roads (see Lopes v Rostad, 45 NY2d 617, 622 [1978]; Dolt v County of Suffolk, 199 AD2d 363, 364 [1993]), but does not extend to town highways constructed and controlled by the Town (see Link v County of Suffolk, 183 AD2d 703, 704 [1992]; see also Garito v Town of Kent, 254 AD2d 254 [1998]; Osborn v Cassidy, 119 AD2d 976 [1986]; Luciano v O'Brien, 105 AD2d 1004 [1984]).

---

**3.** It should be noted that Highway Law § 129 further states that the County may apportion the cost of such maintenance between it and the local municipalities. The parties do not cite Highway Law § 129 in their briefs, although it was cited by the County in its memorandum of law to the Supreme Court. We are thus not called upon to express an opinion about this section, which expressly places the obligation to maintain County Roads on the County, but additionally provides that the County may apportion the resulting costs between itself and local municipalities (see Highway Law § 129).

Further support for this interpretation is found in Highway Law § 115, which provides that "no road shall be constructed, reconstructed or *maintained* with any such county road fund moneys except the road set forth" in the Official Map (emphasis added; *see* 1972 Ops Atty Gen [Inf Opn] 137). Moreover, Highway Law §§ 115-a, 115-b and 115-c, as explained above, create a procedural framework for counties to abandon or remove roadways from the County Road System, after providing notice to and receiving consent from the towns or villages [reflecting the County's removal of unrelated roads from County Road System]). Given that these abandoned or removed roadways are to be maintained by the towns or villages (*see* Highway Law §§ 115-a, 115-b), we agree with the Supreme Court's conclusion that the "necessary implication" was that, before any such abandonment or removal from the County Road System, the County Roads were not required to be maintained, improved, and repaired by the Town (*see* 1988 Ops Atty Gen No. 88-69). Indeed, certain of the County Roads at issue herein are listed in various documents submitted by the County as "Roads under County Maintenance."

Several opinions by the Attorney General similarly conclude that County Roads are supposed to be maintained by the County. For instance, 1991 Opinions of Attorney General 91-2 states that "the county is responsible for the upkeep and maintenance of highways which are part of the county road system." Where a town-owned road is transferred into the County Road System, as here, the Town retains title to it; however, the fact that the Town retains title to the County Road does not affect the County's duty to maintain it (*id.*). 2003 Opinions of Attorney General 2003-2 (citing 1986 Ops Atty Gen 86-69) states that upon the transfer of village roads to the county road map, the "county has the authority to maintain those portions of county roads which lie within an incorporated village within the county," and "[u]pon such transfer, the county is responsible for maintaining the road." Again, this Attorney General opinion supports the Town's position that the County is responsible for maintaining the roads in question, despite the fact that they are owned by the Town (*id.*).

The County's contention that, despite being included in the County Road System and receiving funds for their maintenance and repair from the State, these roadways are not County Roads, but town highways, is not borne out by the legislative history or the current Highway Law (*see e.g.* Highway Law § 3

[4]; §§ 119, 129). "Town highway[s]" are defined in Highway Law § 219 (1) as those "constructed, improved or maintained by the town with the aid of the state or county," and expressly excludes "county roads"—as defined in Highway Law § 3 (4)—from its definition. It is clear that County Roads are under the jurisdiction of the County Superintendent and governed by Highway Law article 6 (*see* Highway Law § 102 [1]), and town highways fall under the Town Superintendent and are governed by articles 8 and 8-A (*see* Highway Law § 140). There is no evidence submitted by either party that the County Roads in question were initially constructed by the Town, or incorporated in any town highway improvement program pursuant to Highway Law article 8-A.

In conclusion, these Highway Law statutes lead to the inescapable conclusion that the County has the authority and duty to repair, maintain, and improve the County Roads in question, while the Town does not bear a statutory burden to maintain these roads.

## IV.

In accordance with the foregoing, the order is affirmed insofar as appealed from, since it properly awarded summary judgment to the Town declaring that "the County is responsible for repairing, maintaining and reconstructing" the roads in question, and "no such statutory burden is imposed upon the Town of Huntington for the repair and maintenance of the afore-cited roadways."

FISHER, J.P., ROMAN and SGROI, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.

[Next page is 401.]