OPINION OF THE COURT
Steven M. Jaeger, J.
Introduction
As more fully set forth herein, the court has converted the petitioners’ motion for declaratory and injunctive relief in the order to show cause dated May 31, 2011 (motion sequence No. 2) to one for summary judgment on the first cause of action for declaratory and injunctive relief in the second amended verified petition/complaint. Petitioners therein seek judgment declaring that adoption and/or implementation of Local Law No. 3-2011 of the County of Nassau for use in the 2011 general election of members of the Nassau County Legislature is void in violation of Nassau County Charter §§ 112, 113, and 114.
Parties
Petitioners/plaintiffs (hereinafter referred to as petitioners) Diane Yatauro, Judith A. Jacobs, Kevan Abrahams, Robert Troiano, Jr., Judi Bosworth, Wayne H. Wink, Jr., and David Denenberg are duly elected members of the Nassau County Legislature and are duly registered voters in the County of Nassau, State of New York.
Respondent/defendant Edward E Mangano is the duly elected Nassau County Executive.
Respondents/defendants Peter J. Schmitt, John J. Ciotti, Denise Ford, Francis X. Becker, Jr., Howard J. Kopel, Vincent T. Muscarella, Richard J. Nicolello, Norma L. Gonsalves, Joseph V Belesi, Dennis Dunne, Sr., and Rose Marie Walker are duly elected members of the Nassau County Legislature.
Respondent/defendant William J. Muller is the duly appointed Clerk of the Nassau County Legislature.
Respondent/defendant Nassau County Legislature is the legislative body of the County of Nassau and is comprised of 19 duly elected legislators from single member districts.
Respondent/defendant County of Nassau is a municipal corporation with geographical jurisdiction and home rule powers; it operates pursuant to the Nassau County Charter.
Respondents/defendants William T. Biamonte and Louis G. Savinetti are the duly appointed commissioners constituting the Nassau County Board of Elections.
*840 History of Nassau County Legislature
A. Federal Litigation in the 1990s
Prior to 1996, the legislative body of Nassau County was a six-member Board of Supervisors with weighted voting proportionate to the populace represented by each supervisor. On April 14, 1993, after several Nassau County residents sued the Nassau County Board of Supervisors and Board of Elections, U.S. District Court Judge Arthur D. Spatt ruled that the weighted voting system of the Nassau County Board of Supervisors was unconstitutional as it violated the Equal Protection Clause of the Fourteenth Amendment. (Jackson v Nassau County Bd. of Supervisors, 818 F Supp 509 [ED NY 1993].)
On June 30, 1993, Judge Spatt ordered the legislative branch of the county government to restructure in compliance with his decision. The Nassau County Commission on Government Revision (the Commission) was created to formulate and adopt a remedial districting plan and was directed to present a final recommendation to the Nassau County Board of Supervisors. In accordance with the court’s order, the Commission held public hearings and public work sessions, soliciting public participation. The Commission subsequently issued a final report (annexed as an exhibit to the papers submitted by petitioners in motion sequence No. 1) including new Charter provisions with respect to the restructuring of the Legislature.
The Board of Supervisors failed to adopt the Commission’s original plan. Thereafter, Judge Spatt appointed a special master to formulate a plan. Faced with a proposal to the court by the special master, on August 2, 1994, the Nassau County Board of Supervisors agreed to a revised version of the districting plan initially presented by the Commission. (Jackson v Nassau County Bd. of Supervisors, 157 FRD 612 [ED NY 1994].)
The Commission had proposed section 112 of the Charter as part of its report but could not agree on how the redistricting process would be handled. The Board of Supervisors, as part of its compromise plan, added sections 113 and 114 to the Charter, creating both the temporary districting advisory commission and providing for the adoption of a final redistricting plan by the Legislature.
This revised plan, codified in Local Law 11-1994, and approved by the electorate at a referendum on November 8, 1994, restructured the legislative body of Nassau County from the initial six-member Board of Supervisors to a legislature *841 comprised of 19 single member districts effective January 1, 1996. Among the provisions enacted by said local law, sections 112, 113, and 114 of the Nassau County Charter concerned how future redistricting based upon the results of the federal decennial census was to be handled.
B. 2001-2003 Redistricting Proceedings
On September 27, 2001, pursuant to section 112 of the Nassau County Charter, the Legislature adopted Local Law 15-2001, by a vote of 19-0, which retained the metes and bounds description of the 19 legislative districts established when the Legislature was created. This law stated that the “metes and bounds” were subject to adjustment and alteration as necessary to comply with the legal and constitutional requirements for equal representation and with sections 113 and 114 of the Charter.
The Legislature, pursuant to sections 113 and 114 of the Nassau County Charter, next established a bipartisan temporary districting advisory commission (the 2002 Commission), on the issue of redistricting. During 2002 and early 2003, the 2002 Commission held public hearings, public work sessions, community meetings and sent out notices to residents and entities of Nassau County. On February 28, 2003, Local Law 2-2003 was enacted, amending Local Law 11-1994 and providing for the redistricting of the 19 legislative districts based upon maps developed by the 2002 Commission. As a result, the 19 legislative districts were amended based upon the 2000 census data and were effective for the 2003 general election.
C. 2011 Redistricting Proceedings
On March 3, 2011, pursuant to Election Law § 4-106, the Nassau County Clerk certified the county offices, including the office of county legislator for each of the existing 19 legislative districts, to be voted on at the November 8, 2011 general election, based on the 2000 census data and the map in effect at that time. The results of the 2010 census were released on or after April 1, 2011. In a letter dated April 15, 2011, respondent/ defendant Schmitt, citing only section 112, requested a legal analysis of the Nassau County Charter by the Nassau County Attorney, John Ciampoli. In a letter on the same date, John Ciampoli responded, referring to sections 112, 113, and 114 of the Nassau County Charter as a “three-step process for the development and adoption of a local law providing for apportionment of *842 the Legislative Districts.” Petitioner/plaintiff Jacobs also wrote to Schmitt, referencing redistricting procedure and the content of Local Law 2-2003, indicating that any attempt to redraft district lines for use in 2011 would be premature.
On April 18, 2011, Ciampoli wrote to respondent Schmitt in response to petitioner/plaintiff Jacob’s letter, disagreeing with her interpretation of the Nassau County Charter and enclosing a report comparing population figures in the 2000 and 2010 census data. On April 20, 2011 petitioner Yatauro wrote to respondent Schmitt concerning the financial implication of redistricting in 2011 rather than following the three-step Charter process for a county in the midst of a “fiscal crisis.” Respondent/defendant Schmitt forwarded the report to the County Attorney with instructions to “immediately compose the necessary legislation for legislative review and approval.”
Subsequently, respondent legislators filed clerk item No. 196-11, which was then placed on the May 2, 2011 rules committee agenda. On April 26, 2011, respondent/defendant Schmitt released the “Nassau County Legislature Proposed Redistricting Plan” which included a press release referencing only section 112, as well as information on the proposed 19 districts and the legislative districts to be formed based upon the 2010 census data.
On May 2, 2011, the rules committee of the Legislature approved clerk item No. 196-11 by a 4-3 vote. And on May 9, 2011 a full legislative hearing was held with comments and questions from the public concerning the issue of redistricting and the proposed plan.
History of Current Litigation
This hybrid proceeding combining an action for declaratory judgment and injunctive relief and a special proceeding for CPLR article 78 relief was commenced by filing of a verified petition/complaint on May 10, 2011. On May 12, 2011, this court signed the amended order to show cause (motion sequence No. 1) and granted a temporary restraining order (TRO) enjoining the Nassau County Legislature from adopting and implementing a plan and map of legislative redistricting for use in the 2011 general election in violation of the Nassau County Charter. An amended verified petition/complaint was served and filed as of right at the same time. On May 17, 2011, a justice of the Appellate Division stayed enforcement of said TRO pending hearing and determination by the Appellate Division of respondents’ motion for leave to appeal from said TRO.
*843 Clerk item No. 196-11 was placed on the Legislature’s agenda on May 16, 2011. On said date, respondent legislators filed amended clerk item No. 196-11 with the Clerk of the Legislature. Amended clerk item No. 196-11 contained amendments and changes to the proposed redistricting plan and map contained in clerk item No. 196-11. Petitioners claim that this plan will move approximately 44% of the county’s population into new legislative districts.
On May 24, 2011, the Legislature adopted amended clerk item No. 196-11 and the legislative redistricting plan and map for use in the 2011 general election by a 10-8 vote. The County Executive signed said amended clerk item No. 196-11 as Local Law 3-2011 on said date and it became effective upon filing with the Secretary of State on or about May 25, 2011. Respondent Schmitt caused a copy of said law to be hand-delivered to the commissioners of the Board of Elections on said date.
On May 31, 2011, this court signed the order to show cause (motion sequence No. 2) seeking the relief addressed in this decision (and the short form order dated June 15, 2011). Petitioners sought leave to serve and file a second amended verified petition/complaint as part of the relief requested. The court granted a TRO enjoining the added respondents Biamonte and Savinetti, as the commissioners of the Nassau County Board of Elections, from implementing Local Law 3-2011 for use in the 2011 general election.
Thereafter, a justice of the Appellate Division temporarily stayed enforcement of the TRO. On June 9, 2011, the Appellate Division granted respondents’ motion for leave to appeal and stayed enforcement of the TRO pending hearing and determination of the appeal.
On June 14, 2011, the two motions set forth in the orders to show cause dated May 31, 2011 and May 12, 2011 were submitted for decision. The court granted that portion of the order to show cause dated May 31, 2011 for leave to amend the amended verified petition/complaint by short form order dated June 15, 2011. The order deemed the second amended verified petition/complaint served as of June 15, 2011 and directed respondents to serve and file answers no later than June 27, 2011, at which time the court would consider the remaining requests for relief.
Respondent Biamonte served and filed an answer on or about June 24, 2011.
*844 Respondents Savinetti and the County of Nassau each filed notices of removal to U.S. District Court on or about June 27, 2011. Thereafter, on July 1, 2011, the District Court for the Eastern District of New York (Feuerstein, J.) sua sponte remanded the matter back to this court as to the County of Nassau, and on July 5, 2011 said court (Hurley, J.) sua sponte remanded the matter back to this court as to Savinetti.
On July 7, 2011, this court signed petitioners’ order to show cause seeking to convert this matter into a proceeding under article 16 of the Election Law. The motion was made returnable on July 11, 2011, at a previously scheduled conference.
On July 11, 2011, respondent Savinetti filed an answer and all remaining respondents filed an answer with counterclaims and cross claims, thereby joining issue.
The court, on its own motion, and for the reasons stated on the record at said July 11th conference, converted the pending order to show cause dated May 31, 2011 (motion sequence No. 2) for injunctive and other relief into one for summary judgment only as to the first cause of action for declaratory and injunctive relief (Farrell v Kiernan, 213 AD2d 373 [2d Dept 1995]; Ratner v Steinberg, 259 AD2d 744 [2d Dept 1999]; Rochester City School Dist. v County of Monroe, 13 AD3d 1052 [4th Dept 2004]). Issue had been joined and all parties were permitted to serve and file any further papers relevant to this motion and to the order to show cause dated July 7, 2011 (motion sequence No. 4) no later than the close of business on July 15, 2011 (Hopper v McCollum, 65 AD3d 669 [2d Dept 2009]).
Relief Requested
Identical claims for declaratory and injunctive relief are requested by petitioners in both their second amended verified petition/complaint and in their order to show cause dated May 31, 2011. The declaration sought is that the adoption and/or implementation of Local Law 3-2011 for use in the 2011 election is null and void because it was not done in full compliance with Nassau County Charter §§ 113 and 114 (second amended petition, wherefore clause [A], [F], [L]).
The injunctive relief sought by the petitioners in their first claim for relief is the following:
(1) enjoining the Clerk from certifying such local law (second amended petition 1i 161; wherefore clause [B], [G]);
(2) enjoining the County Executive from signing the local law (second amended petition 1Í162; wherefore clause [C], [H]);
*845 (3) enjoining the Board of Elections from implementing the local law until such time as the Legislature has established a bipartisan advisory commission and the commission transmits its recommendations to the Legislature (second amended petition 1Í163; wherefore clause [D], [I]).
Each of the claims for preliminary injunctive relief seeks such relief until there has been full compliance with the Nassau County Charter.
Decision
A. Authority to Grant Declaratory and Injunctive Relief
The authority to grant declaratory relief is found in CPLR 3001. Case law pursuant to this section recognizes a declaratory judgment action as the proper vehicle to challenge a legislative act (East Suffolk Dev. Corp. v Town Bd. of Town of Riverhead, 59 AD3d 661 [2d Dept 2009]; Wright v County of Cattaraugus, 41 AD3d 1303 [4th Dept 2007]; Hudson Val. Oil Heat Council, Inc. v Town of Warwick, 7 AD3d 572 [2d Dept 2004]; see Matter of Tylec v Niagara County Legislature, 175 AD2d 676 [4th Dept 1991]). In a declaratory judgment action the court declares the prevailing parties’ rights for the purpose of guiding future conduct (Matter of Dandomar Co., LLC v Town of Pleasant Val. Town Bd., 86 AD3d 83 [2d Dept 2011]). CPLR 3001 requires a “justiciable controversy.” Justiciability goes to separation of powers and whether the matter is resolvable by the judiciary as opposed to the executive or legislative branches of government (Matter of Montano v County Legislature of County of Suffolk, 70 AD3d 203 [2d Dept 2009], citing Jiggetts v Grinker, 75 NY2d 411 [1990]).
As for injunctive relief, the court notes that the preliminary injunctive relief sought by petitioners in their motion papers is identical to the permanent injunctive relief requested in the second amended verified petition/complaint. The standards for obtaining permanent injunctive relief are essentially the same as for a preliminary injunction (see Weizmann Inst. of Science v Neschis, 229 F Supp 2d 234, 258 [SD NY 2002]). The court must determine if the moving party has established: (1) a likelihood of success on the merits, (2) irreparable harm in the absence of an injunction, and (3) a balance of the equities in favor of the injunction (see Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990]; W.T. Grant Co. v Srogi, 52 NY2d 496, 517 [1981]; Trump on the Ocean, LLC v Ash, 81 AD3d 713 [2d Dept 2011]).
*846 The issuance of injunctive relief is discretionary, and the availability of such relief depends not only on the rights of the party seeking it, but also on the appropriateness of the circumstances (see Matter of Gerges v Koch, 62 NY2d 84, 94-95 [1984]). “[A] court of equity has an obligation to go no further than absolutely necessary to protect the rights of the complaining parties. The injunction must be framed as narrowly as possible” (Zutt v State of New York, 80 AD3d 758, 759 [2d Dept 2011], quoting Antinelli v Toner, 74 AD2d 996, 997 [4th Dept 1980]).
B. Ripeness for Determination and the Question Presented
The material facts as set forth above are not in dispute. The parties interpret the three provisions of the Nassau County Charter governing redistricting differently. Under these circumstances summary resolution of the first claim for relief is appropriate at this time (Dun & Bradstreet, Inc. v City of New York, 276 NY 198, 206 [1937]; Town of Huntington v County of Suffolk, 79 AD3d 207, 217 [2d Dept 2010], lv denied 17 NY3d 778 [2011]). The question presented herein is whether the Legislature may adopt and the County may implement a local law pursuant to section 112 of the Nassau County Charter to redistrict the 19 legislative districts of Nassau County for use in the 2011 general election, while delaying until 2013 compliance with the companion sections of the Charter, namely, sections 113 and 114.
C. The Relevant Provisions of the Nassau County Charter The following are the relevant provisions of the Nassau
County Charter:
“§ 112. Legislative districts. . . .
“2. The County Legislature shall within six months after public announcement of the enumeration of the inhabitants of Nassau County in each decennial federal census commencing with the federal census for the year 2000, adopt a local law amending Annex A hereto to describe the nineteen county legislative districts which shall be based upon the new census data. Such local law shall comply with the legal and constitutional requirements for equal representation in the County Legislature of the residents of the county. . . .
“§ 113. Temporary districting advisory commission; appointment; terms; vacancies; powers and duties; hearings; and approval of plan.
*847 “1. (a) There shall be a temporary districting advisory commission established each legislative term in which the legislature is required to reapportion the county legislative districts as a result of the federal decennial census. The commission shall consist of eleven members, who shall serve without compensation, appointed as follows: . . . The appointment of members to the temporary districting advisory commission shall be made no earlier than one year and eight months before, and no later than one year and six months before, the general election of the county legislators to be held in the year two thousand and three and every ten years thereafter in accordance with the provisions of this section. . . .
“§ 114. The County Legislature to adopt plan. The County Legislature may reject, adopt, revise or amend the redistricting plan recommended by the temporary districting advisory commission or adopt any other redistricting plan, provided that any plan adopted by the County Legislature shall meet all constitutional and statutory requirements. The County Legislature, shall, no later than eight months before such general election of the County Legislature, prepare and adopt by local law a final plan for the redistricting of the County Legislature.” (Emphasis added.)
D. The Parties’ Contentions
All respondents, except respondent Biamonte, insist that section 112 of the Nassau County Charter mandates a provisional or temporary redistricting for the 2011 general election. Respondents’ argument is based upon a reading of section 112 that is independent of sections 113 and 114. Respondents conclude that sections 113 and 114 come into play after the 2011 general election, at which time a further and final redistricting would take place. Their argument is premised on up-to-the-minute compliance with one-person, one-vote principles.
Petitioners and respondent Biamonte argue in opposition that all three sections of the Nassau County Charter must be read together. Any amendment or change to the current legislative district lines for the 2011 general election does not comport with the plain meaning and intent of the Nassau County Charter. Section 112 is designed to express a general legislative *848 intent for future redistricting which is to be accomplished only after full compliance with sections 113 and 114 of the Nassau County Charter. The time for redistricting to be effective is set forth in section 113, namely 2003, and every 10 years thereafter.
E. Plain Meaning of the Charter Provisions
As “the statutory text is the clearest indicator of legislative intent, ‘the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof ” (Town of Huntington v County of Suffolk at 217, quoting Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see Matter of Jansen Ct. Homeowners Assn. v City of New York, 17 AD3d 588, 589 [2d Dept 2005]).
Section 112 is a general statute which provides for the 19 legislative districts in Nassau County, but does not specifically mention redistricting or the procedure for adopting a redistricting plan. Section 112 simply states that within six months of the public announcement of the results of any decennial federal census, the Legislature is to “describe the nineteen county legislative districts which shall be based upon the new census data.” (Nassau County Charter § 112 [2].) The critical term is the word “describe.” In Black’s Law Dictionary (at 531 [4th ed]), when referring to land, the term “describe” means “to give the metes and bounds.” That is all that is authorized: providing the new metes and bounds of 19 county legislative districts based upon the new census data, in order to start the redistricting process. This is exactly what Local Law 3-2011 does. It describes new proposed legislative districts by metes and bounds.
Section 113 provides for the second step of the process, namely the appointment of a temporary districting advisory commission (the advisory commission). The time frame for this second step of the redistricting process is specific: no earlier than 20 months and no later than 18 months before the general election in 2003 and every 10 years thereafter. The advisory commission’s role is to make recommendations to the Legislature.
Section 114 requires the Legislature to adopt a final plan for redistricting no later than eight months before “such general election of the County Legislature.” The words “such general election” in section 114 appear to refer back to the specific election identified in section 113. These words tie sections 113 and *849 114 together, and provide support for the conclusion that the three Charter provisions were meant to be read together.
The court also notes that the eight-month time requirement set forth in section 114 is identical to the eight-month requirement in Election Law § 4-106, wherein the County Clerk shall certify the county offices to be voted on at least eight months before each general election. This time frame cannot be coincidental.
When read together, the plain meaning of the words is that any redistricting plan adopted pursuant to new census data should be in effect no later than the third year after the decennial census. Sections 112, 113, and 114 provide for a three-step process: (1) describing new lines; (2) recommendations by the advisory commission; and (3) adoption of a new plan for redistricting. This process ends with the adoption of a redistricting plan to be in effect, for the first time following the 2010 census, in the 2013 general election.
E The Constitutional Underpinning for Decennial Redistricting
As the federal census takes place every 10 years, periodic redistricting based upon the new census figures follows accordingly. Courts have recognized that decennial redistricting is “rational” and balances the “need for stability and continuity in the organization of the legislative system” with the need for state legislatures to take into account population shifts and growth (Reynolds v Sims, 377 US 533, 583 [1964]). Indeed, the Equal Protection Clause does not require “daily, monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation” and decennial readjustment “clearly meet[s] the minimal requirements for maintaining a reasonably current scheme of legislative representation” (Reynolds at 583-584).
States operate under the legal fiction that their plans are constitutionally apportioned throughout the decade, a presumption which is necessary to avoid constant redistricting, with its accompanying costs and instability (League of United Latin American Citizens v Perry, 548 US 399, 421 [2006 plurality, Kennedy, J.], citing Georgia v Ashcroft, 539 US 461, 488 n 2 [2003]). Some “lag-time,” or delay, between release of census data and reapportionment of legislative districts is both necessary and constitutionally appropriate, even when elections held in the same year the census data is released will be based on malapportioned districts. (Mississippi State Conference of Natl. *850 Assn. for Advancement of Colored People v Barbour, — F Supp 2d —, 2011 WL 1870222, *7, 2011 US Dist LEXIS 52822, *21-24 [SD Miss 2011] [holding general elections to proceed on current legislative lines notwithstanding malapportionment of existing legislative districts following new census figures from 2010 census].)
Only eight years have passed since the last redistricting in Nassau County went into effect in 2003 based upon the 2000 census figures. Consequently, the Legislature has two more years before redistricting is mandated to satisfy the constitutional principle of one person, one vote. It is worth noting:
“hardly a year passes after reapportionment that citizens are not denied their one-person, one-vote constitutional right. Hurricanes, floods, tornadoes, economic conditions, etc. constantly cause population shifts that leave the one-person, one-vote principle in shambles. Purity in protecting this constitutional right is, as the Supreme Court has recognized, so impractical as to be impossible.” (Mississippi State Conference of Natl. Assn. for Advancement of Colored People, — F Supp 2d at —, 2011 WL 1870222 at *1, 2011 US Dist LEXIS 52822 at *5.)
The “purity” sought by all respondents, except respondent Biamonte, in this case is not only impractical, it is simply not necessary.
G. Legislative History
In 1993, once the weighted voting system of the Nassau County Board of Supervisors was held unconstitutional because it violated the one-person, one-vote principle encompassed by the Equal Protection Clause, Judge Spatt deferred to the legislative branch with respect to bringing itself into compliance with his order. The Commission was appointed by the County Executive and the District Court established a timetable for the Commission itself and for adopting and implementing any remedial plan.
The Commission presented its plan on or about June 1, 1994, but the Board of Supervisors failed to agree to that plan despite the efforts of Judge Spatt to negotiate a resolution (Jackson v Nassau County Bd. of Supervisors, 157 FRD 612, 615 [ED NY 1994]). On July 8, 1994, the court appointed a special master to hear, report, and recommend a legislative districting plan. A *851 draft report and plan was presented to the District Court on or about August 1, 1994. However, on August 2, 1994, the Board of Supervisors adopted a compromise version of the Commission’s plan.
The Commission proposed section 112 of the Charter as part of its report but could not agree on how the redistricting process would be handled. The Board of Supervisors, as part of its compromise plan, added sections 113 and 114, creating both the temporary districting advisory commission and providing thereafter for the adoption of a redistricting plan by the Legislature.
H. The Established Past Practice of the Nassau County Legislature
The legislative districts of Nassau County were reapportioned in 2003 based upon the decennial census data collected in 2000. The redistricting occurred once, not multiple times; the process took place over the course of many months.
On September 27, 2001, pursuant to section 112 of the Nassau County Charter, the Legislature adopted Local Law 15-2001, by a vote of 19-0, which retained the metes and bounds description of the 19 legislative districts established when the Legislature was created. While said local law was effective immediately, it specifically stated:
“the attached metes and bounds will be subject to further readjustment and alternation [sic] as may be necessary to comply with . . . constitutional requirements for equal representation . . . and to allow for the incorporation of recommendations of the temporary districting advisory committee and to allow for the incorporation of actions of the Nassau County Legislature.”
Pursuant to sections 113 and 114, the Legislature next established a bipartisan temporary districting advisory commission (the 2002 Commission), on the issue of redistricting. During 2002 and early 2003, the 2002 Commission held public hearings, public work sessions, community meetings and sent out notices to residents and entities of Nassau County. On February 28, 2003, Local Law 2-2003 was enacted, amending Local Law 11-1994 and providing for the redistricting of the 19 legislative districts based upon maps developed by the 2002 Commission. As a result, the 19 legislative districts were amended based upon the 2000 census data for the 2003 general election.
Legislative construction can be implied from legislative action (Association of Surrogates & Supreme Ct. Reporters within City *852 of N.Y. v State of New York, 78 NY2d 143, 155 [1991]). The past practice of the Legislature from 2001 through 2003 establishes the practical construction of sections 112, 113, and 114 together. This past practice does not support the respondents’ new reading of these provisions, and théir conduct in attempting to implement section 112 before the 2011 election, and sections 113 and 114 before the 2013 election.
I. Legislative Intent
“A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent” (Frank v Meadowlakes Dev. Corp., 6 NY3d 687, 691 [2006], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 97; see also East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202, 209 [2d Dept 2009]).
If the drafters had intended for the Legislature to adopt a redistricting plan under section 112 for use in the general election of the Legislature beginning in 2001 and every 10 years thereafter, they would have used those words in section 112. The words the respondent legislators now read into section 112 simply do not exist.
Further, if section 112 required a provisional redistricting plan to be in effect for the general election held in the same year the census data is released, it would not have provided for a local law describing legislative districts based on the new census data be adopted as late as one month before the general election would actually be held (and perhaps after the date for a primary election). Such a redistricting plan would not only be unworkable from a practical standpoint, but would also prevent compliance with Election Law § 4-106.
Finally, no evidence of an intention to require two separate instances of redistricting for two consecutive general elections following the announcement of the results of the decennial census has been presented. The obvious consequences of expense and voter confusion have not been squarely addressed by all respondents except Biamonte.
J. Conclusion
Based on the foregoing, the court concludes that there is no basis in the Nassau County Charter itself, the legislative intent, the legislative history, or the established past practice of the Legislature to immediately adjust the 19 county legislative districts for the 2011 general election. Sections 112, 113, and *853 114, require one three-step redistricting process to take place over the course of many months for implementation in 2013, not two processes of varying lengths for consecutive elections in 2011 and 2013. Under these circumstances the attempt by all respondents except Biamonte to redraw and implement the district lines for legislative districts in Nassau County for use in the 2011 general election cannot be sustained.
Since the court has determined that petitioners are entitled to a declaration in their favor, the remaining issue to be addressed pursuant to the first claim for relief is whether the additional injunctive relief requested by petitioners is appropriate. The court believes it is neither necessary nor appropriate at this time to take affirmative action after fully declaring the rights of the parties herein. Legislative reapportionment is primarily a matter for legislative action, although equitable relief might be appropriate if a county legislature or county acts in violation of the county charter (cf. Shilbury v Board of Supervisors of County of Sullivan, 46 Misc 2d 837, 841-842 [Sup Ct, Sullivan County 1965], affd 25 AD2d 688 [3d Dept 1966] [declaratory judgment that county board of supervisors was void on constitutional grounds and included affirmative relief to require weighted voting until county enacts further legislation]).
The court declares that the adoption of Local Law 3-2011 to amend Annex A is in accord with Nassau County Charter § 112 as the first step of the three-step process. However, implementation of Local Law 3-2011, in reconfiguring the 19 legislative districts for use in the 2011 general election, is null and void for lack of compliance with sections 113 and 114 of the Nassau County Charter. The earliest election for which the new legislative district lines based on the 2010 census data should be in effect is for the 2013 general election, not the 2011 general election. The court further declares that the lines as set forth in Local Law 2-2003 remain in effect for the 2011 general election.
This declaration grants in part the petitioners’ first claim for relief and denies it in part. Further, the declaration grants in part the counterclaim of the respondent legislators, the County Executive, the Clerk of the Legislature, and the Nassau County Legislature, and denies it in part. Respondents’ cross claim is denied as moot.
The remaining claims for relief numbered two, three and four in petitioners’ second amended verified petition/complaint are hereby severed and shall continue.
*854 All other relief requested in petitioners’ order to show cause dated May 31, 2011 is denied.